Welles, J.
 

 Upon the trial, the defendants’ counsel offered to prove, by the witness Halliday, who occupied one of the buildings insured, at the time of the fire, that he
 
 did business
 
 and kept articles in said building, denominated
 
 hazardous and extra hazardous,
 
 at the time of the fire. The evidence was objected to, and the objection sustained by the judge, to which the defendants’ ^counsel excepted. In this, I think, there was error. The policies all provided that in case the *- premises insured should, at any time after the making, and during the continuance thereof,
 
 be appropriated, applied or used to or for the purpose of carrying on or erxex
 
 
 *533
 

 cisi/ng therein any trade, business or vocation denominated hazardous or extra hazardous,
 
 or specified in the memorandum of special rates in the proposals annexed to the policy, or for the purpose- of storing therein any of the articles, goods or merchandise in the same proposals denominated hazardous or extra hazardous, or included in the memorandum of special rates, unless therein otherwise specially provided for, or thereafter agreed to by the company in writing, to be added to or indorsed upon the policy, then and from thenceforth, so long as the same should be so appropriated, applied or used, the policy should cease and be of no force or effect. The offer was nearly in the language of one of the above provisions, to show its violation.
 

 The answers given by the respondent’s counsel to this point, are — 1. That the fire did not originate in the store occupied by the witness: 2. That no knowledge of the business carried on was shown in the respondent: 3. That there was no proof that the business had been changed from the time the insurance was effected to the time of the fire: 4. That this point was not reserved by the appellants’ counsel, at the close "of the case, and is not among the objections then raised. None of these answers are sufficient.
 

 The provision of the policy referred to amounted to a prospective or promissory warranty, and was as obligatory as if it had been retrospective or concurrent. It was, therefore, of no consequence, that the fire was not produced by its violation or breach.
 
 (Murdock
 
 v.
 
 Chenango County Mutual Insurance Co.,
 
 2 N. Y. 210.) It is equally unimportant, that the respondent was ignorant that such business was carried on ; the question whether a warranty has been broken, can never depend upon the knowledge or ignorance or intent of the party making it, touching the acts or the fact constituting the breach. It was, undoubtedly, competent for the parties to contract in relation to the future business to be carried on
 
 *534
 
 in the ^building insured, without reference to the „ # g^ previous business, and such was the case here. That the business prohibited had been carried on up to the time the policy was made, was no excuse for a violation of the contract. And finally, it was not necessary or proper for the counsel to do more than to except to the decision of the judge at the circuit, overruling the evidence offered. He was, in fact, precluded from making the point in any other stage of the case, by the exclusion of the evidence.
 

 George Deming, the agent at New York of the appellants, testified, that he received applications for insurance in this case, and then held in his hands such applications, and that the policies in question were issued in pursuance of those applications. The defendants’ counsel offered to read and put in evidence the applications, to which the plaintiff’s counsel objected. The judge not being able to perceive that, if admitted, they would be of any weight, overruled the offer and excluded the evidence, and the defendants’ counsel excepted. The bill of exceptions does not. show what these applications were, nor what they contained, and it is, therefore, impossible for this court to determine the question of their materiality. They may have been highly material, or they may have been of no consequence whatever. Until they are shown to have been material, we cannot notice the objection. It was competent for the defendants to have had them incorporated in the bill of exceptions, as constituting a part of his offer, and then we could have judged of their materiality.
 

 Lawrence Flynn, a witness for the defendants, testified, that he lived in one of the buildings insured, and which was consumed by the fire; that he sold candles, oil, camphene and lamps; that he had less than a gallon of camphene, when the fire took place; that he took the camphene and oil out, before the fire; that he went into possession May 1st, 1851, and remained there until the fire; that the building was used for a milliner’s shop, before he went there. The defendants’ counsel offered to prove by this witness that camphene was used in this building by the person who occupied it previous to May 1st, 1850. This evidence was objected to, and the ob- * 535 1 jec^on was Sustained, to which the defendants’ -* counsel excepted. Each of the policies contained a clause to the effect that they were made and accepted in reference to the proposals and conditions thereto annexed, which were to be used and resorted to to explain the rights and obligations of the parties thereto, in all cases not therein specially provided for; and in the proposals annexed was the following provision: “Camphene cannot be used in the building where insurance is effected, unless by special permission in writing, and is then to be charged an extra premium.”
 

 The bill of exceptions states, that “ in each case the policy itself and the conditions and proposals annexed were on the same sheet of paper,
 
 physically attached.”
 
 The prohibition, therefore, in relation to the use of camphene, must be taken and regarded as a part of the policy or contract of insurance.
 
 (Jennings
 
 v.
 
 Chenango Mutual Insurance Co., 2
 
 Denio 75); and it seems to me also, that the provision in question on that subject was a warranty that camphene should not be used in the building insured. The only question in my mind is, whether the use of the prohibited article, at one period of the time for which the policy should by its terms continue, will avoid the policy, in a case where the loss occurred at a time subsequent to such use. For the purposes of this question, it should be treated the same as if the use of the camphene had been permanently discontinued, before the occurrence of the fire which destroyed the property. A warranty in a contract of insurance, is in the nature of a condition precedent. It is settled by numerous decisions, that if the warranty is violated, it avoids the policy, and that it is immaterial, whether thp
 
 *535
 
 breach affects the risk, or is connected with the loss, or not. It would seem, in theory, that it was equally immaterial, whether the act or thing to which the warranty related continued up to the time of the loss, or had ceased or had been discontinued before. The amount of it is, the defendants undertook to indemnify the plaintiff against damage or loss by fire, &c., upon condition that certain stipulations were observed and kept by and on behalf of the plaintiff, and not otherwise. If the plaintiff failed to ^perform those stipulations, the .- ...g^g defendants’ liability to indemnify ceased; could the plaintiff revive it, at pleasure, by fulfilling his agreement — in this case, by removing the camphene ? If he could in one instance, he could, for aught I see, in any number of cases. I incline to the opinion, that this could not be done in any case, without the consent of the defendants, and that the only safe rule is, to hold the contract of insurance at an end, the moment the warranty is broken, and that it cannot be revived again, without the consent of both parties, unless the insurer has, by some act or line of conduct, waived the breach or violation of the warranty.
 

 If this be so, the judge erred in excluding the evidence offered.
 
 Weir
 
 v.
 
 Aberdeen,
 
 2 Barn.
 
 &
 
 Ald. 320;
 
 M’Lanahan
 
 v.
 
 Universal Ins. Co.,
 
 1 Peters 170.) The defendant proved upon the trial, that after the policies were executed, camphene was used for lighting the stores in the several buildings insured, before, and, in most cases, up to the evening the fire took place. This evidence was clear and explicit, and was uncontradicted.
 

 In the proposals annexed to the policies was a list of classes of hazards, and among them was a class headed “ hazardous,” commencing as follows: “ The following trades, goods, wares and merchandise, are considered hazardous, and are charged 12|- cents per $100, in addition to the premium above named for each class, viz.” Then follows a list of trades, occupations and articles,
 
 *536
 
 and among them “spirituous liquors” are mentioned. The defendant proved that a grocery was kept in the store of one of the buildings insured, and that the tenant kept and sold spirituous liquors therein.
 

 It was also proved on the part of the defendants, that the basements and first stories of three of the buildings insured were eight inch walls, and above that, they were four inch walls; they were four stories above the basement: that there were joists above two and a half feet apart in the four inch wall, and that there were sixteen or eighteen joists in the wall of each story. The witness on this subject was a builder and built some of the buildings insured. He testified further, that he was not * 537 1 PreParec^ *° say> whether what he had *spoken -* of as joists, were joists or wall strips; the wall strips are two by four inches, and the joists three by four inches: that the studs were filled in with brick, so that the face of the wall would be partly wood and partly brick; the walls were plastered, not lathed; that wall strips are used in all brick buildings. The plaintiff’s counsel then put to the witness the following question: “Would you consider these houses, and would they be called, brick houses, or not?” This question was objected to by the defendants’ counsel; the objection was overruled and the defendants’ counsel excepted. The witness answered, “I should call the buildings brick: they would commonly be called brick: the front and rear and one end of the buildings were twelve inches thick, and the other end eight inches.” There was no error, in my judgment, in receiving this evidence.
 

 At the close of the evidence, the defendants’ counsel stated to the court, that there was no question of fact for the jury: that the questions were all questions of law upon undisputed facts. The counsel then presented several legal propositions against the plaintiff’s right of recovery, which were all overruled by the judge, to
 
 *537
 
 which an exception was taken; and the jury under the direction of the judge found a verdict in favor of the plaintiff of $10,100.23, and the verdict was reserved by the judge. for further consideration, who afterwards directed judgment for the plaintiff upon the verdict.
 

 The difficulty in this court passing upon this point of the case is, that it is impossible for us to see or know, what facts were considered by the judge as established by the evidence. To illustrate, the defendant’s counsel now contends that there was a warranty that the buildings insured were all brick buildings, and that the evidence shows that part of them, at least, were partly wood and partly brick. Admitting this is so, how does the fact appear? We can only find it out by an examination of the testimony. The bill of exceptions does not assert that such were the facts, nor does it appear that the judge who tried the cause came to that conclusion. It is not the province of this court, to determine facts from the evidence, in an *action depending
 
 t
 
 upon legal principles. It does not appear, what conclusion of fact the judge arrived at, in regard to any of the propositions submitted to him. The proper way for the defendant would have been, to request the judge to instruct the jury in regard to them, and for any error he might have fallen into in responding to such request, the defendant might have had redress upon proper exceptions.
 

 But for the errors at the circuit before mentioned, I think, the judgment below should be reversed, and a new trial ordered, with costs to abide the event.
 

 Judgment reversed, and new trial awarded.