## WUSTUM vs. CITY FIRE INSURANCE COMPANY.

One of the conditions of a fire policy was as follows: "Unoccupied premises must be insured as such. Houses, barns or other buildings insured as *occupied* premises or on occupied premises, the policy becomes void when the occupant personally vacates the premises, unless immediate notice be given to this company and additional premium paid." The policy in this case was silent as to the occupancy of the building insured, but the agent who issued the policy knew that the building was then occupied. The occupant afterwards moved out, and the building remained unoccupied seven months, when it was destroyed by a fire the origin of which was unknown. The insured knew that the premises were vacant, and gave no notice of the fact to the company, and did not pay or offer to pay an additional premium. *Held*, that the company was not liable for the loss.

APPEAL from the Circuit Court for *Racine* County.

The principal facts in this case are stated in the opinion of the court. The policy was silent as to the occupancy of the premises insured, and it was admitted on the trial that nothing was said by the parties at the time the insurance was made, or at either of the renewals, as to whether the premises were occupied or not, but that they were, at the time when the policy was issued and at the time of each renewal, occupied by persons known to the agent of the company; that the premium paid for the insurance (and for each renewal) was at the lowest rate charged for occupied buildings of the same class; that the plaintiff knew, seven months before the happening of the loss, that the premises had become vacant; that the insurance company had no notice of that fact in any manner until after the fire; and that the cause of the fire was unknown.

Judgment against the defendant for the amount insured.

*Strong & Fuller*, for appellant, cited Marsh. on Ins., 350; Angell on Ins., § 14; *Jefferson Ins. Co. vs. Cotheal*, 7 Wend., 80, 81; *Jennings vs. Chenango Co. Mut. Ins. Co.*, 2 Denio, 75; *The Farmers Ins. & L. Co. vs. Snyder*, 16 Wend., 481.

*Paine & Millet*, contra, cited *O'Neil vs. The Buffalo Fire Ins. Co.*, 3 Coms., 124; *Catlin vs. Springfield Ins. Co.*, 1 Sumner, 437; *Gates vs. The Madison Mut. Ins. Co.*, 1 Seld., 469. The policy is silent as to the occupancy of the insured premises, and nothing was said on that subject by the parties when the policy was issued, or when it was renewed, and there is nothing in the proof to show that the hazard was increased in consequence of the premises being for a time unoccupied.

*By the Court*, COLE, J. This was an action to recover the amount due upon a policy of insurance. The appellant insured the respondent against loss or damage by fire, to the amount of eight hundred dollars, on his two-story wooden dwelling house, situate on block 58 of the school section in the city of Racine. It was stipulated and agreed in the policy, that the same was made and accepted in reference to the conditions thereto annexed, which were to be used and re-

January Term, 1862.

WUSTUM
v.
CITY FIRE INS. CO.

May

sorted to in order to explain the rights and obligations of the parties, in all cases not otherwise specially provided for. And the case turns upon the construction which is given to the 5th condition annexed to the policy, which is in the following language: " *Unoccupied premises must be insured as such, or the policy is void*; and in all insurance by this company on unoccupied buildings, it is understood and agreed on the part of the assured, that the premises shall be securely closed. *Houses, barns or other buildings insured as occupied premises or on occupied premises, the policy becomes void when the occupant personally vacates the premises, unless immediate notice be given to this company, and additional premiums paid.*"

It appears that the policy was issued on the 16th of April, 1858, for one year, and was twice renewed, the last renewal being on the 16th of April, 1860, for a year from that date. The house and premises insured were examined and surveyed by the agent of the company. The house was then occupied by persons known to the agent, and it continued to be occupied until the last of April, 1860, when the tenant moved out, leaving the house securely locked and fastened. The house remained unoccupied and vacant until destroyed by fire in the month of December following. It is admitted that no notice was ever given to the company or its agent that the house was vacant and unoccupied, nor had the company any knowledge of that fact until after the fire. It is further conceded that no additional premium was ever paid or offered to be paid by the assured in consequence of the building being thus vacant and unoccupied.

Under this state of facts the question arises, Can the respondent recover? We are clearly of the opinion that he cannot.

It will be readily seen by the condition above cited, that where houses, barns or other buildings were insured as occupied premises, the policy became void when the occupant personally vacated the premises, unless immediate notice was given to the company and additional premium paid. And although the premises in the present case were vacant and unoccupied for some months previous to, and up to the time of the fire, yet it is not pretended that any notice of that

January Term, 1862.

WUSTUM
v.
CITY FIRE INS.
Co.

fact was ever given to the company, or that any additional premium was offered in consequence of the property being in this condition. But still the plain, obvious stipulations of the parties required this to be done, or otherwise the policy was to become void. It seems impossible to escape this result without doing manifest violence to the spirit and meaning of the 5th condition of the policy. Most assuredly the respondent undertook and agreed to give immediate notice to the company in case the premises became vacant; and to pay such additional premium as might reasonably be required in consequence of any increased risk or hazard to the property. But it is said there is no evidence in the case anywhere tending to show that the risk was increased in the slightest degree by the vacating of the premises by the tenant, and that if this were so, the burden of establishing that devolved upon the company. It is by no means clear that a vacant dwelling is not exposed to greater hazard than it ordinarily would be when occupied; that it is not more likely in this condition to provoke the malignity or invite the rashness of the malicious felon or wanton intruder. Certainly it would seem that the company in this instance acted upon that idea, otherwise it would not have annexed such a condition to the policy. However this may be, it is a sufficient answer to this argument to say, that the parties thought proper to make it a condition, that in the event the premises became vacant, immediate notice thereof should be given the company; otherwise the policy should be void. It is not for the courts to dispense with this agreement of the parties. Even if we could assume that the risk to the premises did not increase by their becoming vacant, still the parties have made it a condition that notice should be given the company, and this has not been done. The courts might with as much propriety attempt to relieve the assured from any other executory stipulation which he undertook to perform, as from this. So, whether the risk to the premises in fact became greater because they were vacant and unoccupied, it is not material now to inquire. The parties expressly stipulated in the policy, or in the above condition annexed to the policy, and made a part of it, that if the insured prem-

ises should become vacant, immediate notice of that circumstance should be given to the company. If this were not done, it avoided the policy. Such is the manifest agreement of the parties, and they must be bound by it.

Again it is said that the policy is silent as to the occupancy of the premises, and that a stipulation that they should continue to be occupied during the term of insurance, cannot be supplied by argument or implication. It is provided that "*unoccupied premises must be insured as such, or the policy is void.*" Surely the premises in this case were not insured as "unoccupied premises," and therefore by the clearest and most necessary implication, it appears they were insured as occupied. For if they were vacant they should have been insured as unoccupied. This is what the policy required. And a neglect or omission to insure them as such, if they were indeed vacant, likewise rendered the policy void. But it fully appears from the case that at the time of the making of the policy, and at each of the renewals, the house was occupied. The fact was well known to the agent of the company at the time he made the survey, and it was admitted on the trial that it was not known to the company that the premises had become vacant until after the fire. In view of this admission and of the fact that the premises were not insured as "unoccupied premises," we must assume that it was the clear understanding and idea of the parties, that this dwelling house, when insured, was occupied, and should continue to be occupied, or in the event it became vacant during the life of the policy, that then notice thereof should be given the company. If this were not so, it would affirmatively appear in the policy itself that the premises were vacant, in conformity to the 5th condition above referred to.

The counsel for the respondent, in support of his view of the case, referred to *O'Neil vs. The Buffalo Fire Insurance Co.*, 3 Coms., 122 ; *Catlin vs. The Springfield Fire Ins. Co.*, 1 Sumner, 434 ; and *Gates et al. vs. The Madison Mutual Ins. Co.*, 1 Selden, 469. An examination of these cases will show that they are not applicable to the question we have been considering. In *O'Neil vs. The Buffalo Fire Ins. Co.*, the property insured was described in the policy as a "two story

frame building fronting on Ridout and Market streets, in the town of London, Canada West, *occupied* by the Hon. George J. Goodhue as a private dwelling." It appeared that about three weeks before the fire, Goodhue removed from the house, leaving it vacant. And it was contended that as the house was insured as an occupied dwelling, and not as a vacant building, and as the assured suffered it to become vacant without the assent of the company, this circumstance avoided the policy. The court, however, overruled the objection, holding that when, in an application for insurance, and in the policy issued, the property was described as occupied by a certain individual as a private residence, this did not amount to a warranty of the continuance of the occupation during the risk, and therefore that the company was liable, although before the loss the occupant had removed and left the premises vacant. But it does not appear that there was any such condition annexed to the policy in that case, as the 5th condition in the policy we have been considering; and therefore we deem the reasoning of the court inapplicable. For we know of no sound principle of law or morals which would warrant a court in relieving the assured from an express stipulation in his contract to give immediate notice to the company when the building became vacant.

In *Catlin v. The Springfield Fire Ins. Co.*, the words in the policy were, "at present occupied as a dwelling house, but to be occupied hereafter as a tavern, and privileged as such;" and Judge STORY held that the language did not import, on the part of the assured, a warranty that the premises should be so occupied during the continuance of the risk. Such language, it was said, at farthest was but a mere representation of an intention on the part of the assured to occupy the building as a tavern and to secure for it the privileges of the policy as such. Whereas if the building continued to be occupied as a common dwelling house, the risk would be far less, while the premium remained the same. In construing the language of the policy, Judge STORY puts the hypothetical case referred to by the counsel for the respondent. He says: "Suppose a policy against fire underwritten on the house of A in Boston, described as a dwelling house,

or occupied as a dwelling house; would the policy be void if the house should cease for a time to have a tenant?" "Such a doctrine," he adds, "has never to my knowledge been asserted, nor should I deem it maintainable." We apprehend that eminent jurist would hardly reach such a conclusion in view of a condition which distinctly and expressly provided that the policy should become void when the occupant vacated the premises, unless immediate notice were given the company and additional premium paid. For this reason we deem the doctrine of that case not applicable to the one at bar.

We do not deem it necessary to make any further or other remark upon the case in Selden, than to say we do not discover anything in it which at all conflicts with the conclusion which we have already announced.

It follows that the judgment of the circuit court must be reversed, and a new trial ordered.