BARNABAS CANNELL *vs.* THE PHŒNIX INS. CO.

*Policy of insurance—construction of. Condition—what within Public Laws of 1861, c. 34. Evidence.*

A change from occupancy to disuse of a building insured, is a change in "its use and occupation," within the meaning of the remedial statute of 1861, c. 34, § 4.

In a fire policy running by its terms "from the 6th day of October, 1866, at noon, to the 6th day of October, 1870, at noon," the stipulation that if the premises insured "become vacant and unoccupied for a period of more than thirty days, the policy shall be void," is not a limitation of the time of the insurance, but is in form and substance a condition of the contract, within the scope of Pub. Laws of 1861, c. 34.

The breach of such a condition by the insured does not, in the absence of fraud, affect the contract of insurance, unless the risk is thereby materially increased.

The question, whether an unoccupied building is a more hazardous risk than one occupied, does not relate to matters of science or skill, and the opinion of a witness is not admissible.

ON EXCEPTIONS to the rulings of *Goddard,* J., of the superior court. Defendants also filed a motion to set aside the verdict as being against evidence.

Assumpsit upon a policy of insurance against loss by fire, on dwelling-house and barn.

The ground of defense was that the policy provided, that it should become and be void, if the premises insured remained vacant and unoccupied for more than thirty days without the consent of the company written on the policy; and that in fact the buildings insured were vacant and unoccupied at the time of the fire, and had then been so vacant and unoccupied from June, 1867, to December, 1868, without the knowledge or consent of the defendants, and contrary to the provisions of the policy, and the representations in the application for insurance.

The plaintiff did not controvert the fact of vacancy as asserted by defendants, but contended that the facts alleged in defense constituted no defense to the action unless the jury should find the risk was thereby materially increased; and defendants also claimed it was a material increase of risk.

The counsel for defendants offered to show by the testimony of the witness as an expert in the business of insurance, its risks and hazards, and by other expert witnesses, that an unoccupied building is a much more hazardous risk than one which is occupied, which proposed evidence was excluded by the court.

Counsel for defendant then proposed to ask the witness, under which class of risks, hazardous, extra-hazardous, and prohibited, an unoccupied or vacant dwelling-house would fall in the defendant company; which question was excluded.

It was also proposed to show, by the same witness, that if notice had been given under this policy of insurance, that this house was vacant for more than thirty days, under the regulations and instructions of the company to their agent, the risk would not have been continued; which was excluded.

The same witness was asked, "As a matter of fact, how does the proportion of losses to the whole number of policies upon unoccupied buildings, compare with the proportion of losses to the whole number of policies upon occupied buildings?"

"Does the Phœnix Insurance Company, of which you are gen-

eral agent, instruct their agents not to issue policies of insurance upon unoccupied buildings as such?"

" In which class of buildings, the unoccupied or the occupied, is the percentage of loss the largest?"

All these questions were objected to by the attorney of the plaintiff, who admitted, for the purposes of the objection, that the witness had made the relative number of losses upon occupied buildings and unoccupied buildings a special matter of study,—and all said questions were excluded by the court.

The counsel for defendants, with other requests which were granted, asked the judge to instruct the jury as follows:

1. That the contract of insurance was for the insurance of the buildings for so much of the time as they were occupied, and for intervals of vacancy not exceeding thirty days, and for no other time, and that the defendants are not liable for loss occurring at other times.

2. That the fact that the buildings remained unoccupied for more than thirty days, without the written assent of the defendant company indorsed on the policy, made the policy void, and entitled the defendants to a verdict in their favor.

3. That there is a material difference between a change of occupancy and no occupancy, or being vacant.

4. That while it is for the jury, under the law of this State, to determine whether a change in the nature of the occupancy of the building insured materially affected the risk, yet under the policy and contract of insurance in this case, if they find that the premises remained unoccupied for more than thirty days, without the assent of the company, they must give their verdict for the company, without regard to how the risk was affected.

5. That the plaintiff is not entitled to recover in this case upon the evilence.

All which requested instructions the presiding judge declined to give.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*S. C. Strout & H. W. Gage*, for the plaintiff.

*N. Webb*, for the defendants.

1. The evidence offered by the defendants and excluded should have been admitted.

It was not in regard to matters of which the jury were as capable of judging as anybody. The evidence offered is of two kinds.

a. The opinion of witnesses, admitted to be experts, based upon especial skill and knowledge, derived from experience and study of the subject-matter. And these opinions were asked on the general subject and not on the particular case.

b. Evidence of facts, within the knowledge of the witnesses, which facts had a direct probative force upon the question of materiality. It was a proposition, on the part of the defendant, to exhibit carefully observed and recorded facts instead of loose and vague impressions. Nothing is more familiar than that observation and registry of facts bring to light truth in conflict with popular belief, and this, too, in regard to the most familiar and frequently recurring incidents, with regard to which, *a priori*, one man's opinion would seem to be worth as much as another's. It was the result of such observation in regard to the proportion of fires in buildings occupied and in those unoccupied, which the court excluded. 2 Duer on Ins. 683, 687, and cases cited; 2 Kent's Com. 284, note; *Howes* v. *N. E. Mut. Mar. Ins. Co.*, 2 Curtis, 229; 1 Greenl. Ev. § 440; 1 Phillips on Ev. 290.

2. The court erred in committing the case to the jury upon the question whether the continued vacancy of the building insured materially affected the risk. So doing was in conflict with the contract made. As long as there was nothing illegal, immoral, or prohibited in the contract made by the parties, they might make such contract as pleased them. And their respective rights and obligations were to be controlled and determined by their contract. Neither the court nor the jury had power to substitute one different from that which the parties had made.

3. The statute of 1861 was not applicable to this case. The

question raised by the defense was that they never took certain risks, and, not that the risks which they did take had been increased.

4. The instructions asked were improperly refused. They include the proper legal construction of the policy.

BARROWS, J.    Item four of the provisions appended to the contract of indemnity, which the defendants gave the plaintiff, consists of something more than half a page of conditions upon the happening of either or any of which, it is stipulated that " then, in every such case, this policy shall be void."

Prominent among these interpolated conditions of defeasance are placed cases of " false representation by the assured of the condition, situation, or occupancy of the property," of " omission to make known every fact material to the risk,"· of " over-valuation or any misrepresentation whatever, either in a written application or otherwise,"—cases where " the assured is not the unconditional and sole owner of the property," or where " the interest of the assured in the property . . . is not truly stated in this policy," or where the " policy shall be assigned either before or after a loss without the consent of the company indorsed thereon," or where " the assured shall have, or shall hereafter make, any other insurance on the property insured, or any part thereof, without the consent of the company written hereon," etc., etc., etc.,—" then in every such case this policy shall be void."    Now with reference to the introduction of these and the like stipulations into policies of insurance, the legislature of this State, in c. 34, Laws of 1861, have provided that,—" No insurance company shall avoid payment of a loss by reason of incorrect statements of value or title, or erroneous description by the insured in the contract of insurance, if the jury shall find that the difference between the property as described, and as really existing, did not contribute to the loss or materially increase the risk; any change in the property insured its use or occupation, or breach of any of the conditions or terms of the contract by the insured, shall not affect the contract unless the risk was thereby materially increased."

While the legislature has not hereby, in so many words, prohibited the fettering of these contracts of indemnity with conditions thus introduced, they have in effect done it by an express provision as clear as words can make it, that no breach of any of them by the insured shall "affect the contract unless the risk was thereby materially increased."

And this comprehensive clause is superadded to an enumeration of some of these conditions, and followed in section 5 by an explicit declaration, that "all provisions contained in any policy or contract of insurance in conflict with any of the provisions of this act, are hereby declared null and void, and all contracts of insurance hereafter made, renewed, or extended in this State, or on property within this State, shall be subject to the provisions of this act."

These parties made their contract in subjection to this clear and positive statutory enactment, and by it their mutual rights and obligations are to be determined. There was an evil which it was designed to remedy, and it should receive a liberal construction in furtherance of its design. These conditions by which insurers undertook to avoid the risk which they had first assumed in general terms, being inserted commonly in fine print, bore no slight resemblance to the "promise not to pay" (the negative part of which, the courts have summarily set aside), and they were little likely to attract the attention of the insured; and so the legislature interposed and said to parties, that the breach of none of them by the party insured, should affect the liability of the insurer, unless the risk was thereby materially increased, or there was fraud on the part of the insured.

But it is said that in the present case, this stipulation that "if the above mentioned premises . . . become vacant and unoccupied for a period of more than thirty days . . . this policy shall be void," is only fixing the time of expiration of the policy, and that the policy had "expired by efflux of time" before the loss occurred, and therefore the plaintiff cannot recover,—in fine, that this language, which we have just quoted from the policy, does not constitute any part of the terms or conditions of the contract, and, therefore, the case is not affected by the statute.

It is impossible to give the language the construction claimed for it. The time limited in the policy is "four years." In the outset the defendants undertake to insure the plaintiffs against loss or damage by fire, in sums certain, upon the various parcels, for "four years at 1 per cent," and they agree to make good unto the said assured, his executors, etc., all such immediate loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property above specified, from the 6th day of October, 1866, at noon, to the 6th day of October, 1870, at noon." That risk continued (unless avoided by some one of the terms and conditions of the policy) for four years from the time of its inception. The lapse of time alone did not affect it until the expiration of the full term. It was only by the breach of what is stated (in Item 4, of "the terms of this policy hereinafter mentioned") both in form and substance as a condition, that the defendants claim to be relieved. To say that this appended stipulation, by reason of which, in a certain contingency, this policy was to "be void," was a limitation of the time of the insurance, is simply a subterfuge.

Each one of the matters and things specified in §§ 3 and 4 of c. 34, Laws of 1861 (respecting which, those sections declare that the liability of the insurance company to the insured shall not be affected unless there was fraud on the part of the insured or the risk was materially increased), is made by the terms of the policy, the subject of a similar limitation. If it is to be construed as merely fixing the termination of the policy by the happening of a certain event, then all the other terms and conditions with which it is associated must be construed in the same way and the statute is effectually nullified. It might just as well be said that the policy expired when the insured got additional insurance, or when he assigned his policy without the consent of the company indorsed thereon, and that the company insured only till these things occurred, and that they constituted simply limitations of the time for which the policy was to run, and not "terms or conditions of the contract." Yet such a construction would be manifestly absurd.

The plaintiff paid the premium for a term of four years. That

was the time for which the policy was to run, but by the condition added to the contract the policy was to be void, if the house remained unoccupied more than thirty days. Such a condition is clearly within the scope of the statute of 1861. It was within the very mischief that the statute was designed to remedy. The plaintiff had a paid-up policy for four years on his house. It can hardly be deemed possible, that if he had understood that any such limitation of the term, or condition of the policy as is now set up, existed, he would have coupled his claim of loss in December, 1868, with the distinct statement that " said buildings were unoccupied at the time of said fire, and had been so unoccupied ever since June, 1867, having been vacated by my family at that time," etc. Apparently he was entirely ignorant that this fact constituted an objection to the payment of his loss. His policy did not set forth in direct terms an agreement to insure for such term of time not exceeding four years, as the house should be occupied, and for thirty days after it was vacated, but an agreement in the first place to insure for four years, followed by many conditions, one of which, on examination, proves to be that if it should " become vacant and unoccupied for a period of more than thirty days . . . then . . . this policy shall be void." This can be reasonably construed only as a condition of the contract, to be observed by the insured upon peril of forfeiture of the term to which he would otherwise be entitled. Then the statute steps in to the relief of the insured, declaring that, in the absence of fraud, a " breach of any of the conditions or terms of the contract by the insured, shall not affect the contract unless the risk was thereby materially increased." And this presents, at once, a question of fact to be determined by the jury,— Was the risk materially increased ? And this must depend as every one will see, upon a great variety of circumstances respecting the situation of the house, and its surroundings and neighborhood.

This matter of a change in the use or occupation of the property insured is one of those specifically provided for, and it is too subtle a refinement to limit the operation of a remedial statute withal, to

say that a change from occupancy to disuse is not, strictly speaking, a change in the use or occupation. And even if this specific provision could be thus strictly construed, the general language that follows would, as we have seen, embrace cases like the present.

Again it is said, that it appears by the context that the parties regarded the vacating of the house, for a period of more than thirty days, as necessarily involving an increase of risk, and that for this reason, the question is not now open to the plaintiff. But even if we are required, against the probabilities of the case, to hold the plaintiff cognizant of the precise terms of the condition and its context, it is not apparent why the result claimed should follow.

The statute makes the effect of the breach of condition by the party insured to depend upon the actual fact of a material increase of risk, and not upon any assumption of the parties with regard to it. Such assumption may have some force as an argument in support of the position that the risk was materially increased, but we do not see any good reason for holding that it precludes the plaintiff from raising the question which the statute makes the decisive test.

The argument that the insurance company might and probably would not have entered into the contract without the insertion of this condition, applies with equal force to all the other terms and conditions covered by the statute.

The answer is, that the insurance company must be conclusively presumed to know the law, and if they contract at all they must contract in conformity with it, and can claim nothing by virtue of the terms and conditions of the contract which is in conflict with the provisions of the statute.

The question is not how the parties regarded it, but whether the risk was, in fact, materially increased by the breach of this condition of the contract.

The jury found that it was not. The evidence discloses nothing from which we can conclude that that finding was clearly erroneous.

The defendants claimed that they did not take this risk. We find by the policy that they did assume it, and then undertook, by means of a condition, to provide for a forfeiture by the insured.

They insist upon this forfeiture, because " 'tis so nominated in the bond,"—in the policy. But there is virtue in the laws of other States, besides Venice.

The forfeiture which they claim is prohibited by our statute, unless the risk was materially increased by the breach of the condition.

The principal question raised by the exceptions with regard to the admissibility of testimony was decided adversely to the defendant in *Joyce* v. *Maine Ins. Co.*, 45 Maine, 168. The facts which they offered must, in their very nature, have depended upon hearsay, and have involved an endless and fruitless inquiry into the circumstances of many losses.

Such evidence was rightly excluded.

*Motion and exceptions overruled.*

CUTTING, WALTON, DICKERSON, and DANFORTH, JJ., concurred.