### JOHN R. POOR *vs.* HUMBOLDT INSURANCE COMPANY.

Suffolk.    March 5. — Aug. 27, 1878.    COLT & SOULE, JJ., absent.

In an action on a policy of insurance, by which there is "warranted a family to live in said house throughout the year," evidence that, at the time of the fire and for some time previously thereto, the only occupancy of the insured premises was by two workmen, who took their meals and were employed elsewhere during the day, but kept their trunks and clothing and slept at night in one of the rooms on the insured premises, will not justify the jury in finding that the warranty has been complied with.

CONTRACT on a policy of insurance, dated July 12, 1875, by which the plaintiff was insured in the sum of $2500 " on his frame building and fixtures known as the Oceanic House, situate in the town of Gosport, Star Island, Isles of Shoals, N. H."

The policy also contained the following clause: "Warranted a family to live in said house throughout the year."

At the trial in the Superior Court, before *Putnam*, J., the execution of the policy, and the loss of the insured premises by fire on the night of November 11, 1875, during the term of the policy, were admitted; and the only question was whether there had been a compliance with the warranty.

Benjamin F. Timmins, called by the plaintiff, testified that he was employed by the plaintiff as porter in the hotel at Star Island in the summer of 1875; that the hotel closed for the season about September 15; that he and Daniel Murray, after the house was closed, slept for about two weeks in a room two stories over the office of the hotel in the main house; that they both spent every night together at the hotel; that Murray then left and Patrick Philben took his place; that after a time their room was changed to a room over the kitchen, so that they might be able to have a stove when the weather should become cold; that no stove was ever set up; that the witness and Philben slept in the room every night until the fire, and were sleeping there. that night; that neither of them was off the island, from the time the house closed until after the fire; that they hauled stone and lumber from the back part of the island; that they kept their clothes and trunks in the room they slept in; that they went through the house every evening with a dark lantern to see that the windows were locked; that the plaintiff had twelve or fourteen men on the island who lived at the Atlantic House where the witness and Philben took their meals; that they used to go out in the morning to their breakfast, and went back at night to sleep, and that sometimes they went in in the daytime to change their clothes.

Patrick Philben testified that he was hired by the plaintiff in June, 1875, to go to Star Island; that during the summer he lived at a house on the island; that, after the hotel closed and Murray went away, he went to the Oceanic House and roomed with Timmins; that he slept there every night until after the fire; that they roomed there every night and occasionally came in at noon times, and, when business called them, several times through the day; that he often went in to change his boots; that about all the time he was around the house; that they kept their trunks

and all their clothes there, and went to the Atlantic House to get their meals; that they generally had supper about six o'clock, and stood round afterwards at the Atlantic House with twelve or fourteen men talking till bedtime; that they went through the lower part of the Oceanic House with a dark lantern nearly every night, and sometimes went up stairs; that they had no light except a dark lantern and a candle in their room; and that they moved from the room over the office to a room over the kitchen, because there was no chimney near the first room.

After the house closed in September, there was no other occupancy than such as appears from the above evidence, and this was all the evidence bearing on the point in issue.

The defendant put in no evidence; but, upon the close of the plaintiff's case, moved for a nonsuit, on the ground that the evidence offered by the plaintiff would not warrant the jury in finding that there was a family living in the house at the time of the fire. The judge overruled the motion, and the case was submitted to the jury upon the question whether the warranty had been complied with.

The defendant asked the judge to give the following rulings: " 1. The occupation of the premises by two hired men in the plaintiff's employ, who took their meals and were employed during the day on other premises, but slept in the insured premises by night, was not such an occupation of the premises as complied with the warranty that a family should live in said house. 2. If the jury find that the plaintiff and his wife and children were not living at the Oceanic House at the time of the fire, and that the only occupation of said house was by two laborers sleeping in it and spending their days and taking their meals elsewhere, such occupation would not be a compliance with the warranty that a family should live in the house throughout the year. 3. Upon all the evidence in the case, the jury would not be warranted in finding a compliance with the warranty that a family should live .n the house throughout the year.''

The judge refused to rule as requested, and instructed the jury as follows: " There is no evidence from which the jury can find an occupation by the plaintiff and his family; but the warranty does not speak of any particular family, but 'a family,' and if

any family lived there throughout the year, it would be a compliance with the warranty. While the common meaning of the term 'family,' as ordinarily understood, is the dwelling together of those of the same lineage, bound together by ties of blood or marriage, yet another definition of the term 'family' is 'the dwelling together of two or more persons collectively in a house,' and if those two persons dwelt, resided and abode together, in this house, as their home, they constituted a family residing there, though they were not in the house all of the time and did not take their meals in the house ; and the jury are to say, upon the definition of the word 'family,' having regard to the purposes and objects of the stipulation, whether there was or not a reasonably substantial compliance with the warranty."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions to the refusal to rule as requested.

*G. Putnam, Jr.,* ( *W. G. Russell* with him,) for the defendant.

*E. S. Mansfield,* ( *G. A. Somerby* with him,) for the plaintiff.

AMES, J.   The stipulation that a family should live in the house throughout the year was an express warranty, and without its literal and exact fulfilment the policy would cease to be binding upon the company. *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416. *Sayles* v. *North-Western Ins. Co.* 2 Curtis, 610. Its natural interpretation would be that during the year the house was to be under that kind of care and supervision which would be furnished by its ordinary and continuous occupation by a family keeping house in it and making it their home. It is manifest that the security against fire, furnished by such a use of the house, would be more effectual than the occasional, even though frequent, visits of watchmen. If the insured desired nothing more than that two watchmen should sleep in the house, he could easily have had such a provision inserted in the policy. Taking the word " family " in its ordinary and popular sense, we see no ground for holding that the two workmen who slept in the build ing constituted a family within the meaning of the policy. They were two laborers, selected from twelve or fourteen, who were employed by the plaintiff in hauling stone and lumber at another part of the island. Their occupation of the house consisted in sleeping every night, and in keeping their trunks and clothing, in one of the rooms. They took their meals elsewhere, and went

the rounds every night with a dark lantern, usually visiting the house at about bedtime, and leaving it before breakfast. That is to say, they were watchmen, not a family. We think therefore that the defendant was entitled to the rulings which it requested, and that the jury were not justified in finding that the plaintiff had complied with the warranty.

*Exceptions sustained.*