## MOORE *v.* PHŒNIX INSURANCE COMPANY.

A policy rendered void by the violation of a condition that the insured building shall not be unoccupied for a period of more than ten days without the insurer's consent indorsed on the policy, is not revived by the subsequent occupation of the building.

ASSUMPSIT, on a policy of insurance issued August 15, 1876, for the term of three years, insuring the plaintiff's house, shed, and barn, situated in Hart's Location, in the sum of $800, and $50 on the hay and produce in the barn. The premises were destroyed by fire December 18 or 19, 1876. The policy, among other conditions, contained the following: " If the above mentioned premises shall become vacant and unoccupied for a period of more than ten days . . . without the assent of this company indorsed hereon, . . . then and in every such case this policy shall be void." In the written portion of the policy was inserted the following: " Occupied by tenant . . . and reference to application forming part hereof." At the time the policy was issued, the premises were occupied by a tenant who the plaintiff expected would stay through pleasant weather, or until some time in November, and who agreed to notify the plaintiff when he moved away. The tenant left the premises August 24, without giving the plaintiff notice; and they remained unoccupied thereafter up to December 11, when the plaintiff sent two men from Lisbon to make preparation and get the buildings ready for occupancy by themselves and others during the winter, while engaged in getting out last-blocks from the plaintiff's land. These men occupied the buildings from December 11 until December 18, when, their provisions having given out, they started for the White Mountain House for supplies, and returned on the 19th. During their absence the buildings were burned. The plaintiff and the two men expected the former to return from his home at Lisbon, N. H , with supplies, by December 17 or 18, but he was prevented from doing so by a severe storm until December 20.

The defendants were not informed, and did not know, that the buildings were vacant for any length of time after the insurance was effected and before the fire, until some time after the proofs of loss were filed.

The defences were,—1. Fraudulent misrepresentation in procuring the insurance, and over-valuation.    2. That the policy was not in force, or binding on the company, at the time of the fire, by reason of the condition in regard to unoccupancy.    3. That the plaintiff fraudulently caused the buildings to be burned.

The plaintiff had no actual knowledge that the premises were unoccupied until he went there, December 11.    There was no claim that the failure to give notice of the unoccupancy of the buildings was a mistake, within the meaning of Gen. Laws, *c.* 172, *s.* 2, nor was there any evidence tending to support such a claim.

The defendants moved for a verdict.    Motion denied, and the defendants excepted.

The court instructed the jury, as matter of law, that the policy did not become void by reason of the non-occupation of the buildings from August 26 to December 11, 1876; and the defendants excepted.

Verdict for the plaintiff, which the defendants moved to set aside.    Motion denied, and the defendants excepted.    The opinion makes it unnecessary to state the other exceptions taken upon the trial.

*Philip Carpenter, Bingham & Aldrich,* and *Bingham, Mitchells & Batchellor,* for the defendants.

*Ray, Drew & Jordan, Rand & Morse,* and *J. L. Foster,* for the plaintiffs.

SMITH, J.    The defendants are liable only in accordance with the terms and stipulations expressed in their contract as the conditions of their liability.    The contract is in writing, and is contained in the policy of insurance.    In consideration of $8.50 paid by the plaintiff, the defendants covenanted to insure his property against loss or damage by fire for the term of three years commencing August 15, 1876.    The policy contained this condition: " If the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant and unoccupied for a period of more than ten days, or the risk be increased by any means whatever within the control of the assured, without the assent of this company indorsed hereon, . . . then, and in every such case, this policy shall be void."    The premises remained unoccupied from August 24 until December 11, 1876, and on the 18th or 19th of that month were destroyed by fire.    The contract was, not that the policy should be void in case of loss or damage by fire during the period of unoccupancy, but that vacancy and unoccu-

pancy should terminate the policy. There is no occasion to inquire what distinction there may be between a vacant and an unoccupied building (*Herrman* v. *Merchants' Ins. Co.*, 81 N. Y. 184, *Herrman* v. *Adriatic Ins. Co.*, 85 N. Y. 162, *N. A. Fire Ins. Co.* v. *Zaenger*, 63 Ill. 464, *American Ins. Co.* v. *Padfield*, 78 Ill. 167), for no point was made at the trial that the plaintiff's buildings were not both vacant and unoccupied from August 24 until December 11. Nor is it necessary to go into an inquiry of the reasons for exacting this condition. It is enough that the parties entered into the covenant. It was a condition that would afford protection of a substantial character against fraudulent incendiarism, of which insurers may well avail themselves. *Hill* v. *Ins. Co.*, 58 N. H. 82; *Sleeper* v. *Ins. Co.*, 56 N. H. 406. The insurers had a right, by the terms of the policy, to the care and supervision which are involved in the occupancy of the buildings. *Ashworth* v. *Ins. Co.*, 112 Mass. 422.

There was no waiver by the defendants of the condition, nor any assent to the changed condition of the premises insured, for they had no notice or knowledge that the buildings were unoccupied until the plaintiff furnished his proofs of loss. A waiver, to be effectual, must be intentional. The premises were left unoccupied more than ten days; and if the non-occupation had continued to the time of the fire, the plaintiff could not recover. *Fabyan* v. *Ins. Co.*, 33 N. H. 206; *Shepherd* v. *Ins. Co.*, 38 N. H., 240; *Sleeper* v. *Ins. Co.*, 56 N. H. 406; *Hill* v. *Ins. Co.*, 58 N. H. 82; *Baldwin* v. *Ins. Co.*, 60 N. H. 164; *Lyman* v. *Ins. Co.*, 14 Allen 329; *Merriam* v. *Ins. Co.*, 21 Pick. 162; *Herrman* v. *Ins. Co.*, 85 N. Y. 162; *Harrison* v. *Ins. Co.*, 9 Allen 231; *Wustum* v. *Ins. Co.*, 15 Wis. 138; *Mead* v. *Ins. Co.*, 7 N. Y. 530; May Ins. (ed. 1873) s. 248.

It is contended by the plaintiff, upon the authority of *State* v. *Richmond*, 26 N. H. 232, that the policy had not become absolutely void at the expiration of ten days from the time the house became unoccupied, but was voidable only at the election of the defendants. In the construction of contracts words are to be understood in their ordinary and popular sense, except in those cases in which the words used have acquired by usage a peculiar sense different from the ordinary and popular one. In this case the word "void" has not acquired by usage a different signification from the ordinary and popular one of a contract that has come to have no legal or binding force. Whether the cessation of the executory contract of insurance was temporary and conditional, or perpetual and absolute, is a question; but "void" means that on the eleventh day of continuous non-occupation the plaintiff was not insured. The defendants might have waived the condition altogether, or might have waived its breach; but having had no opportunity before the loss to make their election to waive the breach, their refusal to pay, when notified of the loss and unoccupancy,

was an effectual election that they insisted upon the condition in the policy.

The duty of obtaining the consent of the defendants to the changed condition of the buildings rested with the plaintiff. By his neglect to comply with this requirement of the contract, it came to an end by force of its own terms. *Girard Ins. Co.* v. *Hebard*, 95 Pa. St. 45. If, when the unoccupancy commenced, he had requested the assent of the defendants, they would have had their option to continue the policy upon payment of such additional premium as the increased risk called for, or to cancel the policy, refunding the unearned premium. *Lyman* v. *Ins. Co.*, 14 Allen 329. There is no presumption that they would have given their assent to the unoccupancy of the buildings without the payment of a premium commensurate with the additional hazard.

The contract being once terminated, it could not be revived without the consent of both of the contracting parties. It is immaterial, then, whether the loss of the buildings is due to unoccupancy or to some other cause. *Mead* v. *N. W. Ins. Co.*, 7 N. Y. 530, 535, 536; *Lyman* v. *State M. F. Ins. Co.*, 14 Allen 329, 335; *Merriam* v. *Ins. Co.*, 21 Pick. 162; *Jennings* v. *Ins. Co.*, 2 Denio 81; *Shepherd* v. *Ins. Co.*, 38 N. H. 232, 239, 240; *Poor* v. *Ins. Co.*, 125 Mass. 274; *Alexander* v. *Ins. Co.*, 66 N. Y. 464, 468; *Sleeper* v. *Ins. Co.*, 56 N. H. 401; *Hill* v. *Ins. Co.*, 58 N. H. 82.

In *Mead* v. *Ins. Co.*, 7 N. Y. 530, it is said,—"The only safe rule is to hold the contract of insurance at an end the moment the warranty is broken, and that it cannot be revived again without the consent of both parties, unless the insurer has by some act or line of conduct waived the breach or violation of the warranty." If, as the report of that case seems to show, camphene was used for light in the building insured (in violation of a condition in the policy), and was removed from the building after the fire had commenced but before it reached the building, the case is not of much value upon the question now under consideration.

In *Fabyan* v. *Ins. Co.*, 33 N. H. 203, it was provided in the policy that if the insured should procure further insurance on the property without the consent of the company indorsed on the policy, the company should be discharged from liability. The insured procured further insurance without notice to the company, which expired before the loss by fire, and it was held that the insurer was discharged. See, also, *Glen* v. *Lewis*, 8 Exch. 607.

This result is in accordance, also, with that rule of the law of marine insurance which holds that a deviation from the stated voyage against a condition in the policy discharges the insurer, though the loss does not happen during the deviation, nor the risk be increased thereby. *Kettell* v. *Wiggin*, 13 Mass. 68; *Burgess* v. *Ins. Co.*, 126 Mass. 70; *Fernandez* v. *Ins. Co.*, 48 N. Y. 571; *Ins. Co.* v. *Le Roy*, 7 Cranch 26. Kent says,—"The courts are exceedingly strict in requiring a prompt and steady adherence to the per-

formance of the precise voyage insured; and, considering the particular state of facts upon which calculations of the value of risks are made, and the uncertainty and danger of abuse that relaxations of the doctrine would introduce, the severity of the rule is founded in sound policy." 3 Kent Com. 314.

*Worthington* v. *Bearse*, 12 Allen 382, is not in conflict with the authorities that alienation of title avoids the policy. In that case the mortgagor (plaintiff) of a vessel insured his interest (seven eighths) for one year, payable to the mortgagee. The mortgagor then sold thirteen sixteenths of the vessel to L., who agreed to pay the plaintiff's debt to the mortgagee, but failing to do it, reconveyed the thirteen sixteenths to the plaintiff during the year. It was held that the contract of sale was never executed, but that if it had been the plaintiff's right to recover was only suspended during the time the title to the vessel was vested in the vendee,— there being no stipulation in the policy that the insured should not convey or assign his interest in the vessel during the year.

*Landers* v. *Ins. Co.*, 86 N. Y. 414, cited by the plaintiff, only decides that the defence of prior insurance was not disposed of on the trial, as the prior insurer might not elect to avoid its policy for breach of condition, and, if the agent of the defendants knew of the prior insurance, the question of waiver would be material; and so a new trial was ordered.

In *Baldwin* v. *Ins. Co.*, 60 N. H. 164, the policy was held void, although it did not appear that the fire was caused in consequence of the change in title.

The decisions in Maine, cited by the plaintiff, are not in point, for c. 34, Laws 1861, Maine, provides that "Any change in the property insured, its use or occupation, or breach of any of the conditions or terms of the contract by the insured, shall not affect the contract unless the risk was thereby materially increased." May Ins. 269; *Cannell* v. *Phœnix Ins. Co.*, 59 Me. 582.

The cases cited from Illinois seem to have followed the decision in *Ins. Co.* v. *Wetmore*, 32 Ill. 245, where the policy provided for a suspension of liability so long as the premises should be appropriated and occupied in violation of the terms of the policy. And accordingly, in *N. E. F. & M. Ins. Co.* v. *Schettler*, 38 Ill. 166, *Schmidt* v. *Ins. Co.*, 41 Ill. 296, and *Ins. Co.* v. *McDowell*, 50 Ill. 120, it was held that the insurer's liability recommenced when the increased risk terminated.

In *Gans* v. *Ins Co.*, 43 Wis. 108, there was a provision in the policy that it should become void if the building insured should become unoccupied without the consent of the defendants. The building was burnt while unoccupied. It was held that the policy was voidable at the option of the insurer. The agent of the company had knowledge of the unoccupancy, which was held to be constructive notice to the company. The assured furnished proofs of loss which were not satisfactory to the company, and he

was required to furnish fuller proofs at an expense of five dollars. It was held that the company was estopped to set up unoccupancy as a defence, and could not subject the plaintiff to further expense and delay for proofs without prejudice to its rights to declare the policy void. In the same state, in *Wustum* v. *Ins. Co.*, 15 Wis. 138, it was held that the insured could not recover for the loss by fire of buildings while unoccupied, where the policy provided that if the buildings should become unoccupied, immediate notice should be given to the company and additional premium be paid, or the policy should become void, and no notice of the unoccupancy was given nor additional premium paid. In *Putnam* v. *Commonwealth Ins. Co.*, 18 Blatchf. 368, it was held that the policy was suspended while the forbidden use of naphtha was continued.

*Lane* v. *Maine Ins. Co.*, 12 Me. 44, and *Power* v. *Ocean Ins. Co.*, 19 La. 28, are not wholly in point. In the former case there was a stipulation in the policy that it should be void, and should be surrendered to be cancelled in case of alienation of the property by sale or otherwise. The insurance was on a store and on the stock of goods in it. The assured, during the existence of the policy, leased the store by parol and sold the stock of goods. Subsequently he took back the store and the remaining goods. It was held that this was not an alienation of the store within the meaning of the policy, and that the policy would attach to any goods the assured might have in the store at any time within the term of the policy. In *Power* v. *Ins. Co.*, the policy was on household furniture and other personal property, and contained a stipulation that in case of any transfer of the interest of the assured without the consent of the insurer, the policy should be void. The property was sold during the continuance of the risk, but was afterwards taken back on account of the non-payment of the price. The plaintiff was held to have been restored to the possession and ownership of the property before the loss, as if no transfer had taken place. The decision also went upon the ground that the undertaking was to insure the plaintiff, not on the identical goods or effects existing at the time of the insurance, but on those of the same description that might have been in the building named in the policy within the time covered by it.

In *Obermeyer* v. *Globe Mut. Ins. Co.*, 43 Mo. 573, the policy recited that there was insurance in other companies in the sum of $18,000, and gave permission for further insurance in the sum of $2,000, "to be reported in total when required," and in default of notice the policy to "cease and be of no effect." Afterwards further insurance was obtained in the sum of $4,000. At the time of the loss there was $12,000 other insurance. The over-insurance was terminated more than two months before the loss. It was held that the policy was only interrupted while the over-insurance continued. In *Morrison* v. *Tenn. M. & F. Ins. Co.*, 18 Mo. 262,

where A effected insurance on property and afterwards sold and conveyed it to B, who reconveyed it to a trustee to secure to A the payment of the purchase-money, it was held that A retained an insurable interest, and after a loss might recover on the policy.

In *Mitchell* v. *Lycoming Mut. Ins. Co.*, 51 Pa. St. 402, it was held that a breach of a covenant in a policy not to insure beyond two thirds of the estimated value of the property is a forfeiture of the policy; and that when other policies which are alleged to create the over-insurance are void at the time of the loss, they are no obstacle to a recovery on the policy; but if voidable for some breach of condition for which the insurer might avoid them but which they had waived, the over-insurance exists. See, also, May Ins. (ed. 1873) *cc.* 16, 17, and 1 Phil. Ins., *ss.* 734, 975.

The strict and literal meaning of the stipulation that the policy shall be void if the premises remain unoccupied more than ten days is not that the insurance will be suspended merely during non-occupation after the ten days, and will revive when occupation is resumed. In ordinary speech, a void policy is one that does not and will not insure the holder if the insurer seasonably asserts its invalidity. It might be argued that this clause should be so construed as to accomplish no more than the purpose for which it was inserted; that its sole purpose was to protect the insurer against the risk resulting from non-occupation; and that if this risk was terminated by reoccupation, the parties intended the insurance should be suspended only during the existence of the cause of a risk which the company did not assume. On the other hand, it might be argued that such an intention would have been manifested by words specially and expressly providing for a suspension and resumption of the insurance, and would not have been left to be inferred from the general agreement that the policy should be void; that a final termination of the insurance at the end of ten days of non-occupation is plainly expressed by the provision that the policy shall then be void; and that the parties would not think it necessary to go further, and provide that the void policy should not become valid on reoccupation.

Without determining the true construction, or what the result would be if there were no authority in this state, we are inclined to follow the decision in *Fabyan* v. *Insurance Company*, 33 N. H. 203, although in that case the question of suspension seems not to have been presented by the plaintiff or considered by the court. It was apparently assumed that "void" meant finally extinguished, and not temporarily suspended; and in the present state of the authorities we are not prepared to hold that the assumption was erroneous.

*Verdict set aside.*

BLODGETT and CARPENTER, JJ., did not sit: STANLEY, J., dissented: the others concurred.