The cause stood continued for advisement, until this term, and now the opinion of the Court (the Chief Justice, having been of counsel for the plaintiffs, did not sit in the cause) was delivered as follows, by
Sewall, J.
(After stating the facts.) The defendant objects against the demand in this action.
1. That the policy is wholly void, for its uncertainty in not speci fying what part of the gross sum insured is applicable to each of the distinct subjects to be protected by the insurance.
2. That the loss did not happen in the course of the voyage insured, or while the ship was under the protection of this policy.
It is not necessary to decide upon the first objection, and, indeed, we are not all agreed in opinion upon it, but we are all agreed upon the second objection in a manner decisive of the action.
In deciding upon the second question, arising in this case, whether the loss happened in the voyage insured, and while the ship was under the protection of this policy, it seems essential to ascertain the construction of this policy, as to some of the termini of the voyage insured. The words in this instrument describe a voyage, which at the first view seems to be interminable, unless at the will of the assured. A voyage from the Canaries to any port or ports in Spanish America *may, by a possible construe- [ * 416 ] tian, be understood to authorize an unlimited employment of the ship in the ports of Spanish America, at the will of the insured, under the protection of this policy. But this construction is too unreasonable to be admitted.
In France, where insurance is usually made to the French West Indies generally, the risk is construed to continue on the goods until they are landed, and on the ship until the outward cargo is dis *366 charged (6). In cases governed by certain notorious usages, as in the case of vessels chartered by the East India Company in England. an insurance of a ship at and from Bengal to any ports or places in the East Indies, and forwards and backwards, and during her stay at each place, until her arrival at London, has been construed to cover intermediate country voyages in the East India seas, and the customary detention or prolongation of the voyage by the orders of the company’s servants in India (7). But in an insurance of a foreign ship, a more limited construction has been given of the liberty of touching and staying at ports and places. As in the case of Lavabre vs. Wilson (8), where the insurance was of a French ship upon a voyage to Pondicherry and China, with liberty to touch and stay at any ports and places beyond the Cape of Good Hope, &c., it was decided that the words would not cover a voyage to Bengal, being out of the usual course of the voyage insured.
In the case before us, one part of the voyage insured is to commence at the Canaries, and to terminate outwards at a port or ports in Spanish America; but no voyage commencing at a port in Spanish America to another port in Spanish America, is within this description; and the reasonable construction, according to the opinions and decisions cited, there being no notorious usage to control this case, must be, that the outward voyage terminated at the discharge of the outward cargo of this ship carried from the Canaries, and the destination of the ship was to Vera Cruz. There the whole of the outward cargo was discharged, and there the outward voyage must be considered to have terminated.
[ * 417 J * Then a further inquiry will be, whether the stay at Vera Cruz, occasioned by the seizure of the outward cargo, was a deviation from the voyage insured, or a voluntary change of the risk.
The captain (Walsh) swears that the sole occasion*of his stay was the seizure and detention of the outward cargo. There is nothing in the case which contradicts this representation of his conduct. With his owners, and all interested in the cargo which had been seized, the hope of recovering .it,and the advantages of the captain’s agency, in soliciting their .claim, would sufficiently justify his stay at Vera Cruz, and the consequent detention of the ship. It may be understood that the insurers, by this policy, were not interested in the outward cargo, after it had been safely landed from the ship. But the captain is the common agent of the concerned, and it is his duty to manage their distinct and separate, as well as their joint *367 interests, according to his best judgment; and whatever is fairly done with this purpose, is within the course of the voyage; and delays occasioned by such events are accidents to which the insurers are accidentally, if not directly, subjected.
And if the stay at Vera Cruz was not, then was the voyage commenced from Vera Cruz for the Havanna, in the course of which the loss happened, which is now demanded, a deviation from the voyage insured, or the engaging in a distinct and unconnected risk ?
Upon the ground that the outward voyage terminated at Vera Cruz, the words of the policy covered only the necessary stay there, and a voyage from that place to a port of discharge in the United States. According to the testimony of the captain, his object was to bring the ship back to the United States, and he had her cleared out for the Havanna, as being the most safe and expeditious route to the United States; and because, as one of the house of Madan Brothers lived at the Havanna, the captain could there make the ship an American bottom, and sail from thence directly to the United States. This is the general representation of his intentions in his own words; and admitting his intentions to have been as he seems to represent them, the passage to * the [*418] Havanna is not covered by the words of the policy, even if it was to have been taken in the course of the voyage to the United States (9). It was, under all the circumstances, a voyage to a place, where the vessel was to be detained upon a distinct trade and business, the disposal of the cargo received on freight, for the IIa vanna; and being a distinct and additional risk, it is only to be justified, if at all, by the supposed necessity for it. And admitting that the necessity of going to the Havanna, to restore the property of the ship, and her original character, and for the means of obtaining proper custom-house papers for a voyage directly to the United States, was a sufficient excuse for the deviation or new voyage, will this necessity extend to any other property than that originally subjected to it at the risk of the insurers ? Necessity may justify a deviation made for a sufficient cause, and fairly intended for the benefit of the concerned, and the security of the property insured (10). A deviation under such circumstances, though not within the letter, is within the spirit, of the contract.
To maintain the demand in this action for the loss of freight, upon the goods shipped at Vera Cruz for the Havanna, the supposed necessity must be understood as an extension of the contract, *368 at the will of the insured, to comprehend a new risk in property as well as place, and to afford an opening for a new adventure not provided for, in the original contract.
But the necessity supposed in this case appears to me not to t« of the kind which justifies a deviation. Nothing will justify a deviation, but a real and imperious necessity (11). In all the decisions, where necessity has been considered a sufficient excuse for a departure from the voyage insured, the cases are of that kind. In the present case, a change of papers was expressly licensed by the policy; but it would be an unreasonable construction to say, that the insured had, under that Ucease, an authority to engage the insurers in an unlimited voyage and risk. The ship was destined to the Havanna, because one of the Spanish house happened to reside there. But if he had not been there, or had died [ * 419 J before #the arrival of the ship, then, by force of the same necessity, a voyage to Teneriffe had been equally excused; or if the partner supposed to be at the Havanna, had gone from thence to Vera Cruz, to render his good offices there, then the vessel might have returned to that place with the benefit of another freight, and all these different passages, and as many more as the assured had been disposed to undertake, might have been brought within the protection of this policy, which, at the time the voyage to the Havanna commenced, according to the words of it, and in the events stated, insured only a passage from Vera Cruz to the United States. Without examining how far Captain Walsh’s deposition proves any necessity applicable to the ship itself, I am clearly of the opinion that, in the utmost latitude, which can be imagined, of a necessity arising by the voluntary act of the insured, or of their agent, in the negotiation of the property insured, and the evidences of it, it is not that real and imperious necessity which justifies a change of the risk, stated in the policy.
And upon the whole it is the opinion of the Court, that no part of the loss demanded in this action happened in the course of the voyage insured, and, therefore, that the defendant is not liable.
According to the terms of the rule, bringing the case before the whole Court, the verdict for the plaintiffs must be set aside, and a verdict entered for the defendant.

 Marshall, 179, cites Emerigon, tom. 1, p. 72.—tom. 2, p. 73.

 Marshall, 183.—3 Burr. 1707.

 Doug. 271

 Vide Park, 295.—Fox vs. Black.—Townson vs. Guyon.

 Marshall, 408, 409

 Marshall, 413.—[Kettell vs. Wiggin, 13 Mass. 68 —Ed.]