NEW-YORK, October, 1811.

ROBERTSON *v.* COL INS CO.

---

## ROBERTSON *against* THE COLUMBIAN INSURANCE COMPANY.

THIS was an action on a policy of insurance, on the *American* brig *Ohio*, from *New-York* to the island of *Teneriffe*, and at and from thence to *New-York*, at a premium of five and a half *per cent.* The policy was dated 31st *August*, 1809. On the 2d *September*, 1809, the following clause, by an agreement between the parties, was added to the policy, and written in the margin: " For the additional premium of two *per cent.* received this day, permission is given to the brig *Ohio* to proceed from *Teneriffe* to the *Isle of May* and *Bonavista*, and at and from them, or either of them, to *New-York ;* to return one *per cent.* if she does not proceed to *Bonavista*, the risk ending safely."

The *Ohio* arrived, on the 13th of *October*, at *Oratavia Bay*, which is an open road in the island of *Teneriffe*, being her port of destination and where she intended to discharge her cargo ; but before the vessel came to anchor, she was visited by a health officer, from the island, who informed the master that the vessel would not be

A vessel was insured from *New-York* to *Teneriffe*, at a premium of 5 1-2 *per cent* and for an additional premium of 2 *per cent.* permission was given to proceed from *Teneriffe* to the *Isle of May* and *Bonavista*, and at and from thence to *New-York*, to return one *per cent* if the vessel did not proceed to *Bonavista*,andtherisk ended safely.

The vessel arrived at *Teneriffe*, but was refused permission to enter or land any part of the cargo, until after performing a quarantine of 40 days, because her bill of health

was not signed by the *Spanish* consul, at *New-York*, and the master not choosing to perform the quarantine, went to *Madeira*, the nearest port where he could enter and land his cargo, and there sold and delivered the cargo, and then proceeded to the *Isle of May*, and there took in a cargo, and arrived at *New-York ;* but having suffered damage by the perils of the sea, on her voyage home, an action was brought on the policy to recover a partial loss : it was held, that the going from *Teneriffe* to *Madeira* was a *deviation*, but that the insured were entitled to a return of premium of one *per cent.* that part of the voyage to *Bonavista* never having commenced.

NEW-YORK,
October, 1811.

ROBERTSON
v.
Co.   s. Co.

permitted to an entry, or to land any part of her cargo, until she had performed a *quarantine* of 40 days, because her bill of health was not certified by the *Spanish* consul at *New-York;* and that if it had been so certified, the quarantine would have been only eight days. The master wrote to the consignee on shore, and by his application obtained permission, on the 17th of *October*, to land the corn, which composed part of the cargo ; but the weather was so bad that nothing could be landed, until the 30th of *October*, on which day the government at *Teneriffe* prohibited all vessels from *New-York* from entering and landing their cargoes, unless their bills of health were certified by the *Spanish* consul. The master of the *Ohio* then determined to seek another port, and on the 31st of *October* proceeded to *Madeira*, which was the nearest port, where he arrived on the 4th of *November*, and landed and sold the cargo. The vessel afterwards proceeded to the *Isle of May*, and sailed from thence for *New-York*, on the 31st of *December*, 1809. During her passage, she met with very bad weather, which much injured the hull, sails and rigging, and sustained further injury by striking on a shoal near *Great Egg Harbour*, on the 6th of *February;* and on the 8th of *February*, 1810, she arrived at *New-York*.

The present action was brought to recover a partial loss on the vessel; and a verdict was taken for the plaintiff, subject to the opinion of the court, on a case agreed upon by the counsel.

The case was argued by *Colden* and *Sampson*, for the plaintiff, and by *S. Jones,* jun. and *C. I. Bogert*, for the defendant.

The only question argued was, whether there had not been a deviation.

The plaintiff's counsel cited *Scott* v. *Thompson*, (1 *New Rep.* or 4 *Bos. & Pull.* 181.) *Suydam & Wyckoff* v. *The Marine Insurance Company*, (2 *Johns. Rep.* 138.)

*Reeve* and another v. *The Commercial Insurance Compa-*
*ny,* (3 *Johns. Rep.* 352.)

The *defendant's* counsel cited *Goix* v. *Low*, (1 *Johns.
Cas.* 341. 406.) *Suydam & Wyckoff* v. *Marine Ins. Co.*
(1 *Johns. Rep.* 181. 190.) *Schmidt* v. *The United Ins.
Co.* (1 *Johns. Rep.* 249. 262.) *Speyer* v. *The New-York
Ins. Co.* (3 *Johns. Rep.* 88. 93, 94.) *Kane* v. *The Co-
lumbian Ins. Co.* (2 *Johns. Rep.* 264.) 11 *East's Rep.*
21.

*Per Curiam.* There was no necessity for going from
*Teneriffe* to *Madeira.* It was sailing on a different voy-
age from the one insured. The master went there to sell
his cargo; and for the same reason, he might have gone
to *Lisbon.* It was a voluntary deviation from the voyage
mentioned in the policy. Nothing but necessity, or an
apprehension of danger, could excuse his departure
from the usual and direct route to *Bonavista;* and as this
part of the voyage was abandoned and never commen-
ced, the plaintiff is entitled to a return of the one *per
cent.* premium mentioned in the policy, and no more.

Judgment accordingly.