AMBROSE MERRILL *vs.* THE BOYLSTON FIRE AND MARINE
INSURANCE COMPANY.

A policy of insurance for a voyage is defeated by the abandonment of the voyage after its
commencement, and the substitution of a new port of discharge, although at the time
of the loss the vessel is pursuing a course which she might have taken if she had con-
tinued upon the voyage insured.

CONTRACT upon a policy of insurance, by which the defend-
ants insured the plaintiff in the sum of $6000, to wit : " $2000
on freight of ship Abby Langdon at and from Newport to Point
de Galle, and at and thence to Akyab ; also $4000 on freight
of said ship at and from Akyab to port of discharge in the King-
dom of Great Britain."

The case was submitted to the court upon the following
facts : The ship performed her voyage to Akyab, and while
lying there the master entered into a written contract of af-
freightment by which he agreed to take on board a cargo of
rice and proceed to Queenstown or Falmouth, at captain's
option, for orders to discharge at a good and safe port in the
United Kingdom, or on the continent between Havre and Ham-
burg ; and a bill of lading was signed accordingly. In execu
tion of these contracts, the ship proceeded to Falmouth, and
the master there received orders to go to Antwerp to discharge
the cargo, and in pursuance of those orders, and of the contracts,
the ship sailed from Falmouth bound for Antwerp as her port
of discharge, pursuing the usual track until she accidentally
went ashore in a fog on the south side of the Isle of Wight and
was totally lost by perils of the sea. If the master had re-
ceived orders at Falmouth to go to any port on the east coast
of Great Britain, north of the Isle of Wight, the ship might
without a deviation, have pursued the same course which was
followed, down to the time of the loss.

*H. W. Paine,* for the plaintiff. An intention to deviate, not
yet acted on, does not affect the policy. 3 Kent Com. (6th
ed.) 315. *Marine Ins. Co.* v. *Tucker,* 3 Cranch, 357. *Coffin* v.

*Newburyport Ins. Co.* 9 Mass. 436. The policy allows the ship to go to any port of discharge in Great Britain. The ship had a right to stop at Falmouth for orders. *Coolidge* v. *Gray*, 8 Mass. 527. *Lapham* v. *Atlas Ins. Co.* 24 Pick. 1. *King* v. *Middletown Ins. Co.* 1 Conn. 184. Sailing to Falmouth, with a conditional intent to sail thence for some port on the continent, was pursuing the voyage insured. 1 Phil. Ins. § 993. *Heselton* v. *Allnutt,* 1 M. & S. 46. After leaving Falmouth, the ship was upon the same voyage with an intention to deviate. *Lawrence* v. *Ocean Ins. Co.* 11 Johns. 241. The legal effect of an alteration of the voyage is that the policy never attaches; and it would seem to follow as a necessary consequence that if the policy has attached, any subsequent alteration of the voyage is either a deviation or an intended deviation. 1 Phil. Ins. § 1001, and cases cited. In this case, there is no doubt that the risk had attached. And if after leaving Falmouth the master, upon receiving new orders from the shipper, had decided to go to London, would he not have had a right to do so, under the protection of the policy? The ship was never off from the route to London; and the master had never carried into execution his intention to deviate. *New York Firemen Ins. Co.* v. *Lawrence*, 14 Johns. 46.

*B. R. Curtis*, for the defendants.

DEWEY, J. The question is, whether this loss happened in the course of the voyage insured, and while the same was covered by the policy.

Certain general principles will be found, we think, to have been settled in the adjudicated cases, which will reduce the question now before us to a narrow compass. A well settled distinction exists between the cases of a purposed deviation and an abandonment of the voyage. As respects an intention to deviate, if the loss occurs before an actual deviation, the underwriter is not discharged. An abandonment of the voyage, and the substitution of another and different voyage, at once defeats the policy.

The point of doubt, in reference to which there will be found a conflict of authorities to some extent, is, as to the

facts necessary to constitute an abandonment, or, in another form of stating the point, what class of cases range under the head of an intention to deviate merely, and thus retain the benefits of the policy if the loss occurs before the departure from the route common to both the port described in the policy and the port intended to be reached by a deviation.

All the authorities agree that an intention, formed after the commencement of the voyage, to make merely a temporary deviation, without changing the final port of destination, will not affect the policy. The weight of authority seems also very clearly to show that a purpose existing at the commencement of the voyage to put into an intermediate port out of the course of the voyage described in the policy, the original *termini* of the voyage being still pursued, is not the substitution of a different voyage, but only an intention to deviate. *Foster* v. *Wilmer*, 2 Stra. 1248. *Marine Ins. Co.* v. *Tucker*, 3 Cranch, 357. *Hobart* v. *Norton*, 8 Pick. 159. *Hare* v. *Travis*, 7 B. & C. 14. 2 Parsons Mar. Law, 307.

It will be observed that in the above cases there was at no period any intention to change the *termini* of the voyage, and the proposed departure from the direct course was only to be temporary, after which the vessel was to resume and perfect the voyage to the port named in the policy.

As to an abandonment of the voyage described in the policy and the substitution of a new one, all agree that when an actual abandonment of the voyage and substitution of a distinct voyage have occurred before the commencement of the voyage, the policy does not attach, or cover any loss, in whatever parts of the voyage it may have happened. But the question as to what facts will constitute an abandonment of the voyage, and at what period of time in reference to the voyage such abandonment takes place, has been the subject of much discussion and conflict of opinion.

On the one hand, it is insisted that there can be no application of the principles applicable to abandonment, if the alteration of the voyage and substitution of a new one occur at any point of time subsequently to the commencement of the voyage;

and that all changes of purpose as to the course of the voyage are to be treated as deviations or intended deviations, and therefore if the vessel is lost before the actual deviation, such purpose, however fully settled, does not defeat the policy. On the other hand, it is urged that if the ship either originally sails on a different voyage from that described in the policy, or if after commencing her voyage she entirely abandons all intention of prosecuting it, this is in either case a change and abandonment of the voyage which will avoid the policy from the moment the intention of so abandoning is definitively formed.

To sustain the present defence, it is not necessary to adopt the latter position in the broad terms above stated; but it is necessary to hold that such purpose to abandon may be formed and settled after the commencement of the voyage, and after the vessel has arrived at one port of destination which is included in the policy, and before taking her departure therefrom. This question was very much considered in the case of *Lawrence* v. *Ocean Ins. Co.* 11 Johns. 241, and again in *New York Firemen Ins. Co.* v. *Lawrence*, 14 Johns. 46, upon a policy very similar. The question arose upon a policy of insurance " at and from New York to Gottenburg, and at and from thence to one port in the Baltic, or Black Sea, not south of the river Eyder." The vessel sailed from New York and arrived at Gottenburg, the port for the voyage there selected was St. Petersburg, for which she sailed, and while on her voyage thither was detained by various causes at Carlsham, and while there changed her purpose and sailed for Stockholm. While pursuing however the direct route to St. Petersburg, and before she came to the point of departure for Stockholm, she sustained a loss by capture by the French. It was held by a majority of the supreme court, and confirmed by a majority of the court of errors, that it was the case of an intended deviation only ; and the vessel having been lost before she had arrived at the dividing point, the insurers were liable. The conflicting opinions held by the eminent jurists who heard that case leave it, as respects other tribunals, valuable for its fulness of examination and elucidation, rather than as an authority to guide them. Thompson, C. J., in giving

his reasons for thus holding, says: " There is, I am persuaded, no case to be found where a change of voyage, after the com- mencement of the one described in the policy has attached, has been held to be a substitution of a new voyage." p. 262. All the judges treat the case as a policy for a voyage to St. Peters- burg, that port being fixed by the selection made by the as- sured, and taking her departure from Gottenburg with that pur- pose.

Mr. Justice Thompson did not deem it material whether the voyage was to be considered as one entire voyage commencing at New York, or as a voyage commencing at Gottenburg; his position being that, if commenced at either place, it was a com- mencement of the voyage insured, and that such after proposed and settled purpose to change the port of destination would, until an actual deviation had occurred, be treated as a mere intention to deviate, and would not discharge the policy.

Mr. Justice Van Ness, while he fully concedes that, when the *termini* of the voyage are preserved, an unexecuted intention to deviate does not affect the policy, affirms that when the *termini* are abandoned, and a new and independent voyage is deter- mined upon and commenced, the policy ceases to have any effect. Here the *termini* were not preserved, and it must, in his opinion, be treated as an abandonment of the old voyage. He further adds, however : " In every case, (and I affirm it without exception,) where such an unexecuted intention has been held not to vitiate the policy, it will be found that the *terminus ad quem* mentioned in the policy was not abandoned, but the vessel intended ultimately to proceed to it." p. 266. And he held that it was not material, as to an abandonment, whether such change in the voyage was decided and acted upon before or after the voyage commenced.

Chancellor Kent, sitting in the court of errors upon this ques- tion, arising in the case of *New York Firemen Ins. Co.* v. *Law- ence*, held similar views. He said that " if the original place of destination be abandoned, in order to go to another port of discharge, the voyage itself becomes changed, because one of the *termini* of the original voyage is changed. The identity

of the voyage is gone." " And if the intention to abandon be once clearly and certainly established, it then becomes perfectly immaterial whether the vessel was lost before or after she came to the dividing point, because, in either case, she was lost, not on the voyage insured, but on a different voyage." He also repudiates the distinction set up between the case of a change of voyage determined upon before or after the commencement of the voyage.

The case of *Marine Ins. Co.* v. *Tucker*, 3 Cranch, 357, will be found upon examination not to meet the present case, or to sanction the position taken on the part of the plaintiff. It was a policy at and from Kingston, in Jamaica, to Alexandria, in Virginia. The ship originally took a cargo to deliver at Alexandria, but subsequently took freight for Baltimore, with an intention to go to Baltimore, and thence to Alexandria, and while prosecuting her voyage with that intent, and while in the direct course both to Baltimore and Alexandria, and before she had arrived at the dividing point between them, was captured, and the court held it was only a case of intended deviation, and that the insurers were liable. It will be seen that in this as well as many other cases, where the rule of an intended deviation has been applied, the court place great stress upon the fact that the *termini* of the voyage were not proposed to be changed. In this case, Washington, J. says : " The rule which I consider to be firmly established, by a long and uniform course of decisions, is, that if the ship sail from the port mentioned in the policy, with an intention to go to the port or ports also described therein, a determination to call at an intermediate port, either with a view to land a cargo, for orders, or the like, is not such a change of the voyage as to prevent the policy from attaching, but is merely a case of deviation." p. 391. In the same case, Paterson, J. says : " From a review of the cases which have been cited, the principle is established that where the *termini* of a voyage are the same, an intention to land at an intermediate port, though out of the direct course, and not mentioned in the policy, does not constitute a different voyage. In the present case, the *termini*, or beginning and ending points of

the intended voyage, were precisely the same as those specified in the policy." p. 392.

The case of *Kewly* v. *Ryan*, 2 H. Bl. 343, which is often relied upon as an authority to sustain the application of the principle of intended deviation in distinction from abandonment, will be found to rest upon the same ground. It was an insurance from Grenada to Liverpool. The vessel sailed with a settled purpose to touch at Cork. Having been lost before she arrived at the point of deviation, it was only an intent to deviate. The court held, that "where the *termini* of the intended voyage were really the same as those described in the policy, it was to be considered as the same voyage; and a design to deviate, not effected, would not vitiate the policy." p. 348.

The case of *Stocker* v. *Harris*, 3 Mass. 409, is apparently a case having a direct bearing upon the question we are considering, and particularly upon the point whether the doctrine of abandonment of a voyage can be applied to a case arising upon a purpose thus formed wholly after the commencement of the voyage insured, and upon a general policy authorizing sailing to and from various ports. The insurance was " from Boston to the Canaries, at and from thence to any port or ports in Spanish America, in the Atlantic or Ethiopic Ocean, at and from thence to her port of discharge in the United States." The voyage was duly commenced; the ship went to the Canaries, and thence to Vera Cruz. During this period the policy was in full force; but at Vera Cruz she took a cargo for Havana, and on her passage to Havana, but while on the track common to her proper voyage to a port of discharge in the United States, and before any actual departure from that common track, she was captured and lost. This court held that the original voyage had been abandoned, and the voyage from Vera Cruz was a distinct voyage, and the insurers were not liable for the loss, although the same happened before the vessel came to the dividing point. The case just cited would seem decisive of the case now before us.

The rule on this subject, as stated in 1 Arnould on Ins. 344, is, that " a change of voyage takes place when either before or

after sailing the assured abandons the thought of proceeding to the port of destination originally prescribed by the policy, and seeks for another. The effect of such a change of voyage is to discharge the underwriter from all liability on the policy from the moment the purpose of so changing the voyage is defin‑ itively formed. Hence, if the purpose of changing the voyage be fixed before the commencement of the risk, the policy is void *ab initio*, and the risk has never attached; if it be not formed till after the ship has sailed, the underwriter is discharged from all liability for losses which may occur subsequently to its having been formed, although such loss may take place while the ship is still on the track common both to the voyage insured and to that which is substituted for it."

It is not necessary, in sustaining the defence to the present action, to sanction the broad doctrine thus stated by Arnould, and apparently sanctioned by Chancellor Kent and Justice Van Ness, that a change of purpose as to the port of destination, formed while actually on a voyage from the port described in the policy to the port described in the policy, is from the mo‑ ment it is decided upon to be dealt with as an abandonment of the voyage insured. This policy of insurance contemplated in the first instance a voyage to Akyab, for which a stipulated rate of premium was to be paid, and a further voyage from Akyab to a port of discharge in the Kingdom of Great Britain, at another and different rate of premium. The first of these voy‑ ages was made under the terms of the policy. The second commenced at Akyab. Before leaving Akyab, or commencing the voyage, the master entered into a contract, the performance of which required him, as the events proved, to change his port of discharge to one out of the Kingdom of Great Britain. It is true that when the ship sailed from Akyab it was left uncer‑ tain where the port of discharge would be; but there was no right of choice on the part of the ship, as the orders of the shipper were to be received at Falmouth. The stoppage was at Falmouth for such orders; and at Falmouth the shipper, as he was authorized to do by the contract at Akyab, selected Antwerp as the port of discharge for the cargo; and it is

distinctly admitted that, " in pursuance of those orders and of the contracts, the ship sailed from Falmouth bound for Antwerp as her port of discharge." The ship pursued the voyage to Antwerp by the usual track for such a voyage, and while thus pursuing it, she accidentally went ashore in a fog on the south side of the Isle of Wight, and was totally lost by the perils of the sea. The track of the voyage from Akyab to the time of the loss of the ship was one that might have been pursued without liability for deviation, had the master received orders at Falmouth to go to any port on the east coast of Great Britain north of the Isle of Wight.

The facts present a decided case of the substitution of a new voyage, and an abandonment of that described in the policy. The purpose so to do was fully formed, and obligations were assumed in reference to it, before commencing the voyage from Akyab, at the election of the shipper. What was uncertain or fluctuating during the voyage to Falmouth was at that place made certain; and every other purpose was abandoned, and a voyage commenced from Falmouth to Antwerp, which was only defeated by the loss of the ship by the perils of the sea.

That the loss occurred on a track of a voyage common to a port on the east coast of Great Britain as well as the port of Antwerp does none the less make it a case of substitution of a new voyage. The *termini* were no longer the same. The voyage had lost its identity, and could in no sense be called a voyage to a port of discharge in the Kingdom of Great Britain.

Upon the facts stated in the case submitted to us, the court are of opinion that the original voyage was abandoned at Falmouth ; and that when the vessel sailed from Falmouth bound to Antwerp as her port of discharge, she commenced a now voyage, and one not covered by the policy.

*Judgment for the defendants.*