TARLTON (UNITED STATES v.). See Case No. 16,433.

---

## Case No. 13,755.

### The TARQUIN.

[2 Lowell, 358.] [1]

District Court, D. Massachusetts. Dec., 1874.

SEAMEN—WAGES—FISHING VOYAGE.

1. Courts of admiralty may admit parol evidence that illiterate seamen signed a contract not read to them, which differed from their oral agreement; and may, in some cases, re-form a written contract by oral testimony.

2. A usage or practice being proved to put on board only a part of the bait for a fishing voyage to be conducted off the coast of Nova Scotia, the owners relying on catching suitable fish to

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

supply the deficiency, was *held* to be reasonable; and, where the vessel, having failed to catch bait, put into port for a supply, causing a delay of a few days, *held*, that this would not authorize the seamen to refuse further duty.

[Distinguished in Burgess v. Equitable Ins. Co., 126 Mass. 78.]

3. Where the seamen refused duty before their fishing voyage was ended, and obliged the master to come home with only part of a fare,— *held*, they had forfeited their wages.

Two seamen libelled the bark Tarquin for wages; alleging that in May, 1874, they engaged for a fishing voyage from Provincetown to the Banquereau Banks, for the round sum of $150; that the vessel returned to Provincetown, in August, with a cargo of fish, and the libellants were duly discharged, having performed their duty throughout the voyage. The fourth article of the libel propounded that the voyage was broken up in July, at St. Peters, Nova Scotia, for some cause to the libellants unknown; and that the vessel from that time to the time of the libellants' discharge was engaged in the coasting trade, and had earned freight. The answer admitted the contract, excepting that it set up an engagement for the season, and not for a single voyage. It then averred that the libellants refused duty at St. Peters; and that the fishing voyage was thereby broken up, to the great damage of the owners; and that the libellants were then and there discharged, and came home in the vessel at nominal wages. It denied that a coasting voyage was undertaken; but alleged that some wood was taken on board at or near St. Peters, as ballast, to trim the vessel for her voyage home. The shipping articles required the defendants to serve for the season; but the libellants produced evidence, which was not contradicted, that they were unable to read, and that the articles were not read or explained to them, and that their bargain with the master was for one trip only. There was evidence that, when the contract is for a single trip, it is usually considered to be fully performed when the salt or the bait, or other necessary outfits, are all expended; that in this case the bait was all used up early in July, when less than half a full fare of fish had been obtained; and that the vessel having put into St. Peters for bait, the libellants and others of the crew refused duty, alleging that their trip was closed. The owner of the ship testified that, for three or four years last past, the fishing vessels had not been fully fitted out with bait before sailing, because better bait could be taken on the banks; that his vessel was fitted as usual for the year 1874, but, for the first time for several years, the bait had failed at the fishing grounds, and that his vessel and many others had been obliged to put into port for a supply. This evidence was not contradicted.

H. M. Knowlton, for libellants.

F. Dodge, for claimant.

LOWELL, District Judge. Courts of admiralty, acting upon an equitable practice, though not precisely like courts of equity, may admit oral evidence to prove that illiterate seamen have signed a contract which was not read to them, and which differed from their parol engagement, even without proof that any fraud was intended to be practised upon them. This upon two grounds: that the variation in favor of the ship-owner operates a practical fraud; and that this court has a right to re-form a written contract, in some cases, by oral testimony.

Taking it to be proved that the seamen agreed for one trip or voyage only, what were the rights of the parties? I find the evidence to be, that, if the vessel is full, or if every reasonable attempt has been made to fill her, it is to be considered that the trip is ended. This is usually measured by the expenditure of the salt or bait or provisions for the voyage. And this is the meaning of the usage testified to. The owners furnish these things; they pay a lump sum for the trip or voyage; and, when the supplies are gone, it is taken for granted that the men have served out their time.

But now comes in the modification that, of late years, all the bait has not been put on board for the trip in such voyages as this, and, when what is put on board has been used, can the men insist on going home? Upon the evidence, I think not. The reliance which the owners placed on catching bait appears, under the circumstances, to be reasonable; and, when it failed, the men were taking a rather sharp point, not conforming to the spirit of the rule, when they insisted that, the bait being out, their time was up. In fact, the usual time had not elapsed; a full fare had not been caught; the men knew very well that the short supply of bait was accidental. To put into St. Peters might extend their trip a few days; and for that it is possible they might have claimed compensation. What they insisted on was that they had made one constructive trip. Courts of admiralty do not encourage constructive performance of a fair contract.

There was no cruelty, hardship, or imposition practised on the men, nor even what in such a voyage can be called a deviation. The owners had failed to supply enough bait, and might perhaps be required to pay for any time which they lost, because it was part of their duty to furnish bait. But they had acted on reasonable and probable grounds; and the action of the men brought the voyage to a losing termination.

Under these circumstances, I think the libellants cannot truly allege that they have performed their contract. And, as it does not appear that the owners have been benefited by their services, they are not entitled to a quantum meruit.

Libel dismissed.