## SYLVANUS W. BURGESS *vs.* EQUITABLE MARINE INSURANCE COMPANY OF PROVINCETOWN.

Plymouth. Oct. 19, 1875; March 2, 1876. — Dec. 23, 1878. SOULE, J., absent.

A vessel was insured against perils of the seas "at and from Plymouth to Banks, cod-fishing, and at and thence back to Plymouth." The premium was to be at a certain rate per month, and the policy was to end with the voyage. The vessel sailed with the usual quantity of bait, but not with a full supply for the trip, it being customary to rely on catching live bait on the Banks. Such bait had been plenty in previous years, but this year was scarce; and the master, after exhausting the bait on hand, and being unable to catch any, went to the nearest practicable port for bait, returned to the fishing-grounds, and the vessel was afterwards lost by a peril insured against. *Held,* in the absence of evidence of a usage to put into port for bait, under such circumstances, that the doing so was a deviation which discharged the insurer.

CONTRACT on a policy of insurance, dated June 20, 1874, against perils of the seas, whereby the defendant company insured, "lost or not lost, B. A. Hathaway, for Sylvanus W. Burgess, twenty-three hundred dollars, loss, if any, payable to Sylvanus W. Burgess, on Schooner Christie Johnstone; eight hundred dollars on great generals; three hundred and fifty dollars on small generals; three hundred and fifty dollars on advance to crew on board said schooner, at and from Plymouth to Banks, cod-fishing, and at and thence back to Plymouth; risk to com mence June 13, 1874, at noon." The rate of the premium was 3-4 per cent per month, the premium note given was for $114, and the vessel was valued at $2,500. The policy was indorsed "expires with voyage." Answer, a deviation.

Trial in this court before *Gray*, C. J., who reported the case for the consideration of the full court in substance as follows:

The plaintiff introduced evidence tending to show the following facts: The vessel sailed from Plymouth on June 13, 1874, on a cod-fishing voyage to the Banks, in a seaworthy condition, with four barrels of clam bait, which was the usual quantity of bait taken by vessels of her class on such a voyage. For several years past it has been the practice of such vessels not to take enough bait to last for the entire trip, but to rely principally on catching squid on the Banks, and to use them for bait; and for several years prior to 1874 squid have been plenty on the Banks, but in 1874 they were very scarce.

After fishing on the Banks for three weeks, and having exhausted nearly all his bait, the master of the vessel, solely for the purpose of procuring bait, went to St. Peter's, the nearest practicable port where bait could be obtained, there procured bait, and then sailed from St. Peter's to the Banks, and resumed fishing. To reach the port of St. Peter's, the vessel sailed about one hundred and ten miles from the fishing-ground. She left the fishing-ground on Thursday, reached St. Peter's on Saturday; and, having procured bait there, left St. Peter's on Tuesday following, and then sailed for another Bank, where she arrived and resumed her fishing on the next Thursday. On August 6, 1874, while so fishing on the Banks, the vessel encountered a severe gale, sprung a leak, and was totally lost, with all the property on board.

The defendant requested the judge to rule, that these facts amounted in law to a deviation. The judge declined so to rule; but ruled as follows: " If the vessel left Plymouth with the usual amount of bait for the kind of fishing in which she was to engage, and, by an unexpected failure of bait of the kind ordinarily taken on the fishing-ground, it became necessary for her to go into port to procure bait, and she went to the nearest practicable port for that purpose, such going into port was not, as matter of law, a deviation."

The defendant consented to a verdict for the plaintiff, subject to the opinion of the full court upon the question, whether, as matter of law, there had been a deviation. If, in the opinion of the court, the going to St. Peter's for bait was a deviation which discharged the insurer, the verdict was to be set aside, and judgment entered for the defendant; otherwise, judgment for the plaintiff on the verdict.

The case was argued in October 1875, and reargued in March 1876.

*J. C. Dodge*, for the defendant. 1. The facts in this case amounted in law to a deviation which discharged the insurers. The description of the voyage in the policy is definite and determinate: " At and from Plymouth to Banks, cod-fishing, and at and thence back to Plymouth."

" If the vessel departs voluntarily, and without necessity, from the usual course of the voyage, the insurer is discharged." " The meaning of the contract of insurance for the voyage is, that the voyage shall be performed with all safe, convenient and practicable expedition, and in the regular and customary track." " The shortness of the time, or of the distance of a deviation, makes no difference as to its effect on the contract." 3 Kent Com. 312–314. 2 Arnould on Ins. (4th ed.) 416. *Elliot* v. *Wilson*, 4 Bro. P. C. (2d ed.) 470. *Middlewood* v. *Blakes*, 7 T. R. 162. *Brown* v. *Tayleur*, 4 A. & E. 241. *Maryland Ins. Co.* v. *Le Roy*, 7 Cranch, 26. *Kettel*' v. *Wiggin*, 13 Mass. 68. *Dodge* v. *Essex Ins. Co.* 12 Gray, 65. *Fernandez* v. *Great Western Ins. Co.* 48 N. Y. 571. *United States* v. *The Paul Shearman*, Pet. C. C. 98. *Merchants' Ins. Co.* v. *Algeo*, 32 Penn. St. 330.

2. To create the necessity which justifies a departure from the course of the voyage, there must be a degree of force exercised

towards the captain, which either physically he could not resist, or morally, as a good subject, he ought not to resist; as where there is force by mutiny of crew, or force by a national ship. Short of this actual constraint and force are the following: Making a port to refit, or to recruit the crew when generally disabled by sickness; stress of weather; endeavoring to avoid capture; to join convoy; to succor ships in distress; and this is confined to cases where human life is in peril, and does not extend to saving property. 2 Arnould on Ins. 465, 472. And it is only in such cases that a deviation is justified. *Folsom* v. *Merchants' Ins. Co.* 38 Maine, 414. *Robertson* v. *Columbian Ins. Co.* 8 Johns. 491. *Stevens* v. *Commercial Ins. Co.* 6 Duer, 594. *Parsons* v. *Manuf. Ins. Co.* 16 Gray, 463. *Stocker* v. *Harris,* 3 Mass. 409. *Duerhagen* v. *United States Ins. Co.* 2 S. & R. 309.

3. Where the departure from the course of the voyage is to subserve the exclusive interest of the party insured, the departure from the voyage is held to be a deviation. And it has been held in this state, that, if such departure is to avoid a peril of the sea not insured against, the insurer is discharged. *Breed* v. *Eaton,* 10 Mass. 21. See also *O'Reilly* v. *Royal Exchange Assur. Co.* 4 Camp. 246; 2 Parsons Marit. Law, 300, n. 1.

Whether this is the general rule of law or not, if the deviation were caused by peril, or to avoid a peril not insured against, such peril must be a peril of the sea, or a peril ordinarily insured against. 2 Arnould on Ins. 472. 3 Kent Com. 317. 1 Phil. Ins. §§ 1024 *et seq.* 2 Parsons Marit. Law, 300.

If a vessel insured to Havana and back should learn, before entering the port, that there was no cargo there with which she could be loaded, no one would say that her policy protected her in going to the nearest port where a cargo could be had. The defendant did not undertake either that bait should be found on the Banks, or that the voyage should be successful, but only that the vessel should be safe from the perils of the sea, on the voyage stated in the policy.

The case of *The Tarquin,* 2 Lowell, 358, not being a case of insurance, has no application to the case at bar.

*J. Lathrop & A. Mason,* for the plaintiff. 1. The insurance was not on a voyage between two fixed termini, and the policy is

not to be construed by the rules of law applicable to such a policy. The nature of the adventure is described generally as "at and from Plymouth to Banks, cod-fishing, and at and thence back to Plymouth." That "voyage," in such a policy, does not mean "route," but does mean "enterprise," is settled by the case of *Friend* v. *Gloucester Ins. Co.* 113 Mass. 326. The rules governing route policies are therefore no more applicable to an enterprise policy than to a time policy. The policy in this case is more like a time policy than a route policy; for to speak of the vast region of shoals, known as the Banks, as a terminus, would be equivalent to saying that the vessel could not leave the first place on the Banks at which she arrived, without avoiding the policy. The premium in this case was fixed at a certain rate per month, and the policy was indorsed, "expires with voyage." The vessel might, therefore, stay out an indefinite time, while engaged in the prosecution of her enterprise. See *Matheson* v. *Equitable Ins. Co.* 118 Mass. 209; *African Merchants* v. *British Ins. Co.* L. R. 8 Ex. 154. In *The Tarquin*, 2 Lowell, 358, Judge Lowell held that the putting into St. Peter's, under similar circumstances to those in the case at bar, was not a deviation as between the owners of the vessel and a seaman who had shipped on a voyage from Provincetown to the Banquereau Banks and back. The defendant contends that this case has no application, because it was not a contract of insurance. But a deviation, unless justified by necessity, is a breach of the contract, whether it be of wages, affreightment, or of insurance. The rule is the same, and there are the same exceptions to it, in all these instances.

2. In the absence of evidence of any usage to the contrary, it must be presumed that the going into St. Peter's was customary, under similar circumstances. The plaintiff, having obtained a ruling in his favor, had no occasion to go into the question of usage, but it was open to the defendant to show that the usage was the other way. As he did not do so, it may be assumed that what was done was not against usage; and the contrary cannot be assumed.

3. If the master had had on board, when he sailed, all the bait that was required for the voyage, he would clearly have had the right, if, through no fault of his, this bait had become lost or

worthless, to have gone into the nearest practicable port for bait. The giving out of supplies is always a justification of a deviation. What difference can it make, then, that, instead of the bait giving out, he failed to find bait where he had reasonable grounds for the expectation that he would find it?

4. If it is necessary to show that a departure from the course of a voyage is for the benefit of all parties, the court cannot say, as matter of law, that the going into St. Peter's was not as much for the benefit of the insurer as of the insured. A vessel on a fishing voyage is exposed to perils of the seas, and it is clearly for the interests of the underwriter that the enterprise should be prosecuted with all reasonable despatch, and the vessel return home. It is not for his interest that the adventure should be indefinitely prolonged; nor is it for his interest that it should be too soon ended, where, as in this case, the amount of the premium is at a certain rate per month. The vessel sailed in June, and it was expected she would remain out three months, and a nominal premium was inserted in the policy, with a provision that it should be at a certain rate per month. If the master had not gone into port for bait, he must have either remained on the Banks an indefinite time, or have prematurely ended his voyage. In the one case, he might have remained out into the stormy season, and the risk would have been much increased. On the other hand, by prematurely returning, the underwriter would have earned a less premium than he had a right to expect.

5. If a deviation is from necessity or just cause, the underwriter is liable, and, in determining what is necessary, regard must be had to the nature of the voyage, especially if this is stated in the policy. A contract of insurance on a vessel is not merely an insurance of the vessel, nor is it an insurance on the voyage, but it is an insurance of the vessel for the voyage. Therefore, if by a peril to the ship the voyage is lost, the insured may abandon, although there is not a constructive total loss of the ship itself, without regard to the voyage. *Greene* v. *Pacific Ins. Co.* 9 Allen, 217, 224. Hence it follows, that, if an emergency renders it necessary to depart from the route in order to prevent a loss of the voyage, there is no deviation. Unreasonable delay in port after an insurance is effected on a ship " at and from " a place is undoubtedly a deviation, but, in considering

what is unreasonable, regard must be had to the nature of the voyage, and the ship is covered while preparing for the voyage, and taking in cargo. *Chitty* v. *Selwyn*, 2 Atk. 359. *Columbian Ins. Co.* v. *Catlett*, 12 Wheat. 383. *Gilfert* v. *Hallet*, 2 Johns. Cas. 296. 2 Arnould on Ins. (4th ed.) 455. *Phillips* v. *Irving*, 7 Man. & Gr. 325. So, if permission is given to touch at certain places intermediate between the termini, this is held to mean in connection with the purposes of the voyage. *Hammond* v. *Reid*, 4 B. & Ald. 72. *Langhorn* v. *Alnutt*, 4 Taunt. 511, 519. *Solly* v. *Whitmore*, 5 B. & Ald. 44.

6. The true rule is simply that, without regard to the question of benefit to the insurer, a departure from the course of the voyage from "necessity or just cause," is not a deviation. Weskett on Ins. (ed. 1781,) 168. Millar on Ins. 405. Park on Ins. (8th ed.) 619, 647. 2 Arnould on Ins. 464. Marsh. Ins. (5th ed.) 157. 3 Kent Com. 316. 1 Phil. Ins. § 977. The word "necessity" means in commercial law what is "reasonably fit and proper," under all the circumstances of the case. *Somes* v. *Sugrue*, 4 C. & P. 276. *The Amelie*, 6 Wall. 18. *The Fortitude*, 3 Sumner, 228, 248. *Gordon* v. *Mass. Ins. Co.* 2 Pick. 249. *Bliss* v. *Ropes*, 9 Allen, 339, 341, 343. The necessity in this case has been found by the jury.

In many cases a departure from the course of the voyage has been held to be justifiable where it was not in the least for the benefit of the insurer, but merely for the benefit of other interests. Thus in *Dunlop* v. *Allan*, Millar on Ins. 414, a departure was held not to be a deviation, although the plaintiff's goods could have been carried to and delivered at the port of destination, and the departure was made to avoid seizure of the ship and the rest of the cargo. And a departure to avoid a peril not insured against is not a deviation. *Scott* v. *Thompson*, 1 N. R. 181. *Green* v. *Elmslie*, Peake, 212. *Robinson* v. *Mar. Ins. Co.* 2 Johns. 89. See also *Driscol* v. *Passmore*, 1 B. & P. 200; *Driscol* v. *Bovil*, 1 B. & P. 313; *Stocker* v. *Harris*, 3 Mass. 409; *Clark* v. *United Ins. Co.* 7 Mass. 366; *Coolidge* v. *Gray*, 8 Mass. 526; *Riggin* v. *Patapsco Ins. Co.* 7 Har. & J. 279; *Pourverin* v. *La. State Ins. Co.* 4 Rob. (La.) 234; *Thomas* v. *Royal Exchange Assurance*, 1 Price, 195; *Perkins* v. *Augusta Ins. Co.* 10 Gray, 312; *The Teutonia*, L. R. 4 P. C. 171, 179.

The only support for the defendant's position, that, unless the underwriter is benefited by the departure from the course, it is a deviation, is found in the unsuccessful argument of counsel in *Scott* v. *Thompson, ubi supra,* and in the dissenting opinion in *Robinson* v. *Mar. Ins. Co., ubi supra.* Where a departure from the course is made to avoid a peril not insured against, it certainly cannot make any difference that the peril is one ordinarily insured against, for the underwriter cannot be bound by what others deem perils; especially when he has expressly contracted that he would not be bound for such perils. He must be held, if at all, on the ground of the necessity for the deviation; and to say that he is bound because such a peril is ordinarily insured against is illogical, and is confounding an illustration of the rule with the rule itself.

The illustration put by the counsel for the defendant, of a vessel insured to Havana and back, has no application to the case at bar, for, in the case supposed, nothing is said in the policy in regard to the nature of the enterprise; and it is not contended that the vessel could fish elsewhere than on the Banks; but merely that, in the absence of evidence of a usage to the contrary, she could do what was reasonably necessary to procure bait in the emergency that had occurred.

ENDICOTT, J.  By the terms of the policy the vessel was insured "at and from Plymouth to the Banks, cod-fishing, and at and thence back to Plymouth." ' This is a definite and distinct description of the contemplated voyage between two fixed termini. The Banks are named as the outward terminus, and while there engaged in cod-fishing, and until her return to Plymouth, the vessel was covered by the policy. The language used is not open to the construction that it was the intention of the parties to insure her while prosecuting the adventure elsewhere, or doing what was necessary to make it successful outside and beyond the prescribed limits.  A voyage is the sailing of a vessel from one port or place to another port or place, and the purpose for which it is to be conducted, whether as a trading, freighting or fishing voyage, is often mentioned in policies of insurance.  But this designation cannot vary or extend the description, route or termini of the voyage, as named in the policy, unless some usage connected with the particular trade or adventure, is shown

to exist. No evidence was offered of a usage in such voyages to leave the Banks and go into port for bait. So far as the evidence reported discloses any usage in that regard, it appears that for some years it had been the practice to carry out a limited amount of bait, and to rely upon obtaining an additional supply on the Banks. Such being the practice to obtain bait on the Banks, when the supply taken out was exhausted, a departure from the Banks for that purpose could not have been contemplated by the parties in making the policy. We have, therefore, a definite description of the voyage in the policy, and a usage that does not extend its provisions. The question decided in *Friend* v. *Gloucester Ins. Co.* 113 Mass. 326, arose upon a clause in a policy prohibiting a fishing vessel from sailing on a voyage east of Cape Sable after a certain date, and throws no light upon the construction to be given to the words of this policy. The decision in *The Tarquin*, 2 Lowell, 358, turned upon the construction of the shipping articles of seamen, and not of a policy of insurance.

We are, therefore, of opinion, that the vessel, by leaving the Banks and going to St. Peter's for bait, departed from the voyage described in the policy, and the only question to be determined is, whether in law there has been a deviation which avoids the policy.

It may be stated, in general terms, that the assured is protected by his policy, while the vessel pursues the usual and customary course of the voyage; but any departure from the course, or delay in prosecuting it, without necessity or just cause, is a deviation, and discharges the insurer, because another voyage has been voluntarily substituted for that which was insured. Whether the degree or period of the risk is increased, is unimportant, as the assured has no right to substitute a different risk. Whenever, therefore, there is a manifest departure from the course of the voyage, the assured must show that it was justified by the necessity of the case. *Stocker* v. *Harris*, 3 Mass. 409, 418. *Brazier* v. *Clap*, 5 Mass. 1. *Coffin* v. *Newburyport Ins. Co.* 9 Mass. 436, 449. *Kettell* v. *Wiggin*, 13 Mass. 68.

In the case at bar, the alleged necessity arose from scarcity of bait. The plaintiff did not put on board, when the vessel sailed from Plymouth, enough for the entire trip. Squid had been

plenty on the Banks during several years prior to 1874, and the plaintiff relied upon catching them there and using them for that purpose. They happened this season to be very scarce, and, after fishing three weeks, and nearly exhausting his supply, the master sailed for St. Peter's, over one hundred miles distant, procured bait, and returned to the Banks after an absence of a week. It is to be observed, that this so-called necessity did not arise from any peril insured against in the policy, or ordinarily insured against in policies of insurance, and did not involve the safety of the vessel, or of any property on board; it had relation solely to the success of the fishing adventure; and in this the defendant had no interest and had assumed no responsibility.

We are of opinion that the claim of the plaintiff cannot be sustained; and that a necessity to justify the departure in this case cannot be found in the fact that, without going to St. Peter's for bait, the voyage would have failed to be successful or profitable to the plaintiff.

The strictness with which the courts have held the insured to the route named in the policy, is illustrated by the cases already cited, and by many others cited at the argument. *Dodge* v. *Essex Ins. Co.* 12 Gray, 65. *Middlewood* v. *Blakes*, 7 T. R. 162. *Brown* v. *Tayleur*, 4 A. & E. 241. *Fernandez* v. *Great Western Ins. Co.* 48 N. Y. 571. *Merchants' Ins. Co.* v. *Algeo*, 32 Penn. St. 330. But the question to be determined here is, what is the nature and extent of the necessity or just cause which will warrant a departure from the route.

In this connection it may be well to refer to the necessities which clearly justify a departure. There is no deviation when the master is compelled by force, either to depart from his route, or delay its prosecution by the acts of his crew; *Elton* v. *Brogden*, 2 Str. 1264; *Driscol* v. *Passmore*, 1 B. & P. 200; *Driscol* v. *Bovil*, 1 B. & P. 313; or where he is detained by those in authority, or taken out of his course by a ship of war. *Scott* v. *Thompson*, 1 N. R. 181. In *Phelps* v. *Auldjo*, 2 Camp. 350, a master was ordered to sail out and examine a vessel in the offing, by a captain of a king's ship, and, it appearing that he complied without remonstrance or threat of force, it was held to be a deviation. In cases of this description there must be a *vis major*, compelling a departure or delay, which excuses the master. So

where the master is obliged to leave his course, or delay by stress of weather or other peril of the sea, or to go into port to repair or refit, or to re-man or recruit his crew disabled by sickness or reduced by casualties, or to avoid capture or to join convoy in time of war, there is no deviation. It is unnecessary to cite all the cases which fall within these exceptions; many of those relied on by the plaintiff are clearly within them. *Dunlop* v. *Allan*, Millar on Ins. 414. *Green* v. *Elmslie*, Peake, 212. *Clark* v. *United Ins. Co.* 7 Mass. 365. The case last cited is put upon the express ground that the ship was prevented by causes insured against from proceeding on her route, and the departure was from necessity. See also *Folsom* v. *Merchants' Ins. Co.* 38 Maine, 414.

Nor is the departure from the route for the purpose of saving human life a deviation; nor is a policy avoided when the ship goes out of her course to obtain necessary medical assistance for those lawfully on board. *Bond* v. *Brig Cora*, 2 Wash. C. C 80. *Perkins* v. *Augusta Ins. Co.* 10 Gray, 312. In this class of cases the justification does not rest on the same ground as in those previously noticed. It is allowed from motives of humanity, and cannot be extended to the saving or protection of property. In all other cases the necessity must be a real and imperative necessity affecting the vessel, such as actual force preventing the master from exercising his will, peril of the sea, danger of capture, want of repair, disability of the crew, or unseaworthiness, occurring under such circumstances that the master, acting upon his best judgment for the interest of all parties, has no alternative, and is forced to leave his route, or delay its prosecution.

When the departure is caused by such a necessity, the change of route in no respect alters the insurance; because the course of a sea voyage must at times be necessarily subject to extraordinary perils of the sea, and contingencies beyond the control of the master, and in the presence of which he is forced to succumb; and when they occur, and he is obliged to depart from the usual course of the voyage, there is no deviation in the legal sense of the term, for the departure is the necessary incident of the route named in the policy, as prosecuted at the time by the ship. The probability of such occurrences is well understood;

they are known perils of the voyage, and enter into the ordinary contract of marine insurance. And when the master, compelled by the necessity, does that which is for the benefit of all concerned, the act is within the intention of the policy, as much as if expressed in terms. It would be practically impossible to state in the policy all the perils which might arise in a sea voyage and excuse departure from the route ; and therefore, by the rules of interpretation applicable to this species of contract, the policy is held by implication to include them. See *Greene* v. *Pacific Ins. Co.* 9 Allen, 217, 219. In such a policy as this, the necessities justifying a departure, in the absence of usage, from the route, and a visit to a port not named, are those which are caused by some peril occurring in the prosecution of the voyage within the limits named in the policy, and not those which arise in the prosecution of the business for which the voyage was undertaken.

It is true, there is a class of cases much relied on by the plaintiff, where the test is whether the ship at the time of the alleged deviation was pursuing the object and business of the voyage. But those are cases of delay, where the ship was at the port or place named or permitted in the policy. The permission in a policy to go to certain ports or places must always be construed in reference to the purpose of the voyage. *Williams* v. *Shee*, 3 Camp. 469. 1 Arnould on Ins. §§ 141, 142. Any delay for the prosecution of other business, or any unreasonable delay in prosecuting the business of the voyage at such port is a deviation. *African Merchants* v. *British Ins. Co.* L. R. 8 Ex. 154. But if the delay was necessary in order to accomplish the objects of the voyage, and was reasonable under the circumstances of the case, then there is no deviation. *Columbian Ins. Co.* v. *Catlett*, 12 Wheat. 383 *Phillips* v. *Irving*, 7 Man. & Gr. 325. In other words, if the ship is at a place permitted, the delay shall not be a deviation, if it is necessary in the proper prosecution of the business of the voyage. But this test cannot be applied to a departure from the route to a port not named or permitted, for the purpose of the adventure. In all trading voyages, for example, the ship is confined to the ports or coasts named in the policy, and she cannot depart to other places, simply because she may better prosecute the trade elsewhere. If

the departure from the route to insure the success of the adven
ture can be justified as a necessity, it would be difficult to state
any limit to the privilege, or to the duration of the insurance,
and, in the absence of permission to do so in the policy, it cannot
be implied. See *Kettell* v. *Wiggin*, 13 Mass. 68; *Robertson* v.
*Columbian Ins. Co.* 8 Johns. 491. The plaintiff's vessel might
have delayed for any reasonable time upon the Banks for the
purpose of fishing or getting bait, without being guilty of de-
viation; and would have been protected by the policy, even
without proof of usage, because fishing was the purpose of the
voyage, and she could properly prosecute it within the route
named in the policy. *Noble* v. *Kennoway*, 2 Doug. 510, 513.
But she could not go beyond or away from the route for that
purpose.

The illustration put by the defendant's counsel is apposite:
" If a vessel insured to Havana and back should learn, before
entering the port, that there was no cargo there with which she
could be loaded, no one would say that her policy protected her
in going to the nearest port where a cargo could be had." Other
illustrations may be given. If a vessel insured to a particular
port, having letters of credit, should find on arrival that the par-
ties on whom they were drawn had failed, she could not go to
another port for funds, and return for her cargo, and be protected
by her policy. If fish had been scarce on the Banks in 1874, it
would hardly be contended that the vessel could have gone to
other fishing-grounds to fish, although not more distant than St.
Peter's, and yet, if she was justified by necessity in leaving to
obtain bait at St. Peter's and to return in order to make the trip
successful, it would be difficult to hold that the same necessity
would not allow her to fish elsewhere.

In the argument of the plaintiff's counsel, no case was cited
which sustains the position he has assumed, and we are not
aware of any case which goes to this extent. In *Greene* v.
*Pacific Ins. Co.* 9 Allen, 217, the voyage was broken up by
reason of perils to the ship insured against in the policy, and
the question was as to the right to abandon. In *Stocker* v.
*Harris*, 3 Mass. 409, which is strongly relied on by the plaintiff,
an American ship sailing under Spanish colors, as allowed by
the policy, delayed at Vera Cruz five months for the purpose of

recovering outward cargo, which had been seized after landing by the authorities. The captain failed to obtain a restitution, and, being unable to obtain a clearance from Vera Cruz to the United States under Spanish colors, without giving bond to land his cargo in some part of the dominion of Spain, and there being a partner of a Spanish house in Havana by whose assistance he could restore the character of his ship as an American bottom, he took a cargo and freight and sailed for Havana. It is stated in the opinion, though not necessary to the decision, that the delay at Vera Cruz was not a deviation. And it was said by the court: " It may be understood that the insurers, by this policy," (which was on ship, cargo and freight,) " were not inter ested in the outward cargo, after it had been safely landed from the ship. But the captain is the common agent of the concerned, and it is his duty to manage their distinct and separate, as well as their joint interests, according to his best judgment; and whatever is fairly done with this purpose is within the course of the voyage." This is simply stating, in another form of words, that the object for which the ship was at Vera Cruz was the disposal of her cargo, and if the delay was occasioned by fairly attempting to do so, there was no deviation. But the case was decided for the defendant, on the ground that, in sailing for Havana, instead of to a port in the United States, as required by the policy, the ship deviated, and that the reason for doing so was not such a necessity as justified the departure. It was suggested, in giving the reasons for this decision, that if the partner had died, or had left Havana before the ship arrived, then by force of the same necessity a voyage to some other Spanish port or ports would have been equally excused; and thus the ship might have made several passages, although by the terms of the policy she was only insured from Vera Cruz to the United States; and that this would have been to engage the insurer in an unlimited voyage and risk. The same suggestion would be applicable in this case. If the master had failed to find bait at St. Peter's, the same necessity would have justified him in visiting port after port until he found it.

As in the opinion of the court the trip to St. Peter's was a deviation which discharged the insurer, by the terms of the report there must be                                    *Judgment for the defendant.*